Matlock v. Reppy.

## MATLOCK v. REPPY.

1. ACTION FOR DECEIT: *Fraudulent representations.*

    The principles of law applicable to a suit in equity for the rescission of an exe-
    cuted contract for land, on account of fraudulent representations of the land,
    are applicable to an action at law for damages for similar false and fraudulent
    representations.

2. SAME: *Same; What essential to.*

    To maintain an action for damages for false and fraudulent representations as to
    land sold, the vendee must prove: 1. That the fraud related to some matter of
    inducement to the making of the contract. 2. That it wrought injury to him.
    3. That the relative position of the parties was such, and their means of in-
    formation such, that he must necessarily be presumed to have contracted upon
    the faith reposed in the statements of the vendor; and, 4. That he did rely
    upon them, and had a right to rely upon them, in full belief of their truth.
    *Yeates v. Pryor, 11 Ark., 58.*

3. DAMAGES: *Measure of, for fraudulent representations.*

    In an action for deceit the injured party may have his damages measured by the dif-
    ference in the value of the property purchased as it really was and what it would
    have been if the representations made concerning it had been true; or, if he
    prefers, he may have the difference between the real value of the property in its
    true condition and the price paid, or the value placed upon the property in the
    transaction. *Goodwin v. Robinson, 30 Ark., 540.*

4. FRAUD: *Waiver of; Estoppel.*

    The fact that a party injured by fraudulent representations as to the property sold
    to him, accepts and holds the property after ascertaining the fraud, neither waives
    the fraud nor estops him from suing for damages. The false representations
    are in the nature of warranties and must be made good.

APPEAL from *Hempstead* Circuit Court.

Hon. C. E. MITCHEL, Circuit Judge.

*James K. Jones* and *B. B. Battle* for Appellant.

In *Byard v. Holmes, 34 N. J. L., 296,* Mr. Justice Woodhull,
in speaking of an action like this, said: "The action being
grounded on fraud in the defendant, concurring with damage to

Matlock v. Reppy.

the plaintiff resulting from that fraud, to maintain it the plaintiff must allege, with reasonable certainty, and be prepared to prove, at least three things: 1. That the defendant made some representation to the plaintiff meaning that he should act upon it. 2. That such representation was false, and that the defendant, when he made it, knew it to be false. 3. That the plaintiff, believing such representation to be true, acted upon it, and was thereby injured."

To entitle a vendee to recover in an action against the vendor for damages sustained by reason of false representation made by the vendor in the sale of real estate, it must not only appear that the representations were contrary to the facts, but that they were made for the purpose of inducing the vendee to enter into the contract of sale, and that the party making them knew them to be false. *Holmes v. Clark, 10 Iowa, 423; Hallam v. Todhunter, 24 Iowa, 166; Gates v. Reynolds, 13 Iowa, 1; Courtney v. Carr, 11 Iowa, 295; Kineman v. Chandler, 13 Iowa, 327; Hubbell v. Meigs, 50 N. Y., 480; Campbell v. Hillman, 15 B. Mon., 508; Ball v. Lively, 5 Dana (Ky.), 369.*

It is not, however, every false representation of a vendor which will support an action for damages. To do so it must be material to the contract and relate to it; it must work an injury; and the injured party must not only have relied upon it, but have had a right to rely upon it in full belief of its truth. *Winter v. Bandel, 30 Ark., 373; Yeates v. Pryor, 11 Ark., 66; Wilson v. Strayhorn, 26 Ark., 28; Grider v. Clofton, 27 Ark., 244.*

In order for a false representation to be material to a contract, it should be a determining ground of the transaction. It must necessarily influence and induce the contract, and affect and go to its very essence and substance. It amounts to nothing unless it is a proximate and immediate cause of the contract. The contract must be a necessary, and not merely an indirect, result of the representation. If the contract would have been entered into if the representation had not been made, the rep-

Matlock v. Reppy.

resentation would not be material to the contract, but imma-
terial, and no one could be injured thereby, or complain, be-
cause the contract would have been entered into in the same
way it would have been if the representation had not been made.
*McAleer v. Horsey, 35 Md., 452; Clark v. Everhart, 93 Penn.,
St., 349; S. M. R. R. Co. v. Anderson, 51 Miss., 829; Wakeman
v. Dally, 51 N. Y., 27; Furman v. Titus, 4 N. Y., Superior Ch.
Reps., 284; Ball v. Lively, 4 Dana (Ky.), 369; Safford v. Grant,
120 Mass., 25; Lindsey v. Lindsey, 34 Miss., 432; Taylor v.
Guest, 58 N. Y., 266; Atwood v. Small, 6 Clark & Finnelly,
447; Coffee v. Newsome, ex. etc., 2 Kelly (Ga.), 458; Cunning-
ham v. Smith, 10 Grat., 255; Taylor v. Fleet, 1 Barb., 471; Mor-
gan v. Snapp, 7 Ind., 537; Slaughter's admr. v. Gerson, 13
Wall., 383; 2 Parsons on Contracts, 6 ed., pp. 770, 773.*

2. It must work an injury. Falsity, alone, is not a suffi-
cient ground to avoid a contract, but it must work an injury, or,
as it has been expressed, "fraud without damage, or damage
without fraud, gives no cause of action, but where these two
occur and meet together, there an action lieth." *Story on Con-
tracts, sec. 507; 2 Kent's Comm., Lect. 39, p. 490, and authorities
already cited.*

3. The injured party must not only have relied upon the
false statement, but have had a right to rely upon it in full be-
lief of its truth. No one has a right to rely on exaggerated,
unreasonable, incredible or improbable statements, or on state-
ments on which a prudent and cautious man would not rely in
full belief thereof. The law demands of every one the exercise
of due caution and prudence. If, therefore, any one should put
faith in any statement which is unworthy of credence, or is un-
reasonable, or improbable, or represents something to be true
which is inconsistent with human experience, he can not ask of
the law to relieve him from the consequences. In all such cases,
caution and prudence put him on inquiry, and he must suffer
the consequences if he fails to inquire. See *Kerr on Fraud and
Mistakes, pp. 82, 85.*

That no one has a right to rely on representations which merely amount to statements of opinion, as for instance, that wild land is fertile and susceptible of cultivation, or capable of producing crops, or yielding so much to the acre, the authorities prove beyond question. Although they may be fraudulently made by a vendor for the purpose of inducing and should induce another to purchase, and should prove to be false, and the purchaser should be injured on account thereof, he would not be entitled to sue or recover damages. *Gordon v. Parmelee, 2 Allen, 212; Sherwood v. Salmon, 2 Day (Com.), 128; Haycroft v. Creasy, 2 East. 92, new ed., vol. 1, 376; Curry v. Keyser, 30 Ind., 214; S. M. & M. R. R. Co. v. Anderson, 51 Miss., 829; Hubbell v. Meigs, 50 N. Y., 480; Walker v. Mobile, etc., R. R. Co., 34 Miss., 245; Anderson v. Hill, 12 S. & M., 679; Mooney v. Miller, 102 Mass., 220; Coldby v. Gadsden, 34 Beavan, 416.*

*Kerr on Fraud and Mistake, p. 85,* says: "The difference between a false averment in matter of fact, and a like falsehood in matter of judgment, opinion and estimate, is well illustrated by familiar cases in the books. If the owner of an estate affirms that it will let or sell for a given sum, when, in fact, such sum can not be obtained for it, it is, in its own nature, a matter of judgment and estimate, and so the parties must have considered it. But if an owner falsely affirms that an estate is let for a certain sum, when it is, in fact, let for a smaller sum, or that the profits of a business are more than, in fact, they are, and thereby induces a purchaser to give a higher price for the property, it is fraud, because the matter lies within the private knowledge of the owner." So, if the owner of an estate fraudulently represents that the improvements on it cost him a given sum, when, in fact, they cost him a smaller sum, he is liable to an action of deceit by the purchaser, if he was deceived and induced by such representation to purchase the estate. The cost of the improvements is an ascertainable fact and within the knowledge of the owner. It is a material fact which largely enters into the esti-

mate of the buyer when he comes to fix in his own mind what he will give for the estate, especially if he be ignorant and inexperienced as to such matters, as in this case. It is often the only fact by which the buyer can determine the value of the property. Hence it is held by the courts that fraudulent representations as to the actual costs of the property will sustain an action of deceit, when the purchaser has been induced thereby to purchase and was damaged. *Pendegast v. Reid, 29 Md., 398; Sandford v. Handy, 23 Wend., 268; Ives v. Carter, 24 Conn., 392; McFadden v. Robinson, 35 Ind., 24; Somers v. Richards, 46 Vt., 170; Wise v. Fuller, 29 N. J. Eq., 257; Lysney v. Selby, 2 Raymond, 1118; Dobell v. Stevens, 3 Barnwell & Creswell, 623; Risney v. Selby, 1 Salkelds, 211; Elkins v. Tresham, 1 Levinz, 102; Clark v. Dickson, 95 Eng. Com. Law, 453; Bedford v. Bagshaw, 4 H. & N., 53.*

At the time these statements or admissions are said to have been made by Arrington, his agency for the defendant had ceased. He was only authorized by the defendant to make a trade with plaintiff, and that had been made. He could not affect defendant by any word or statement or act of his, except in the course of his agency. His admissions or declarations made when he was not an agent of defendant are and were not admissible against the defendant. *Stiles v. Danville, 42 Vt., 282; Stiles v. R. R., 8 Met., 44; 2. Wharton on Evidence, sec. 1180; Lowell v. Winchester, 8 Allen, 109; Hubbard v. Buist, 7 Wend., 446; Jex v. Board of Education, 1 Hun. (N. Y.), 159; Stewartson v. Watts, 8 Watts, 392; Waterman v. Peet, 11 Ill., 648; Chicago, B. & Q. R. R. v. Riddle, 60 Ill., 534; Chicago, etc., R. R. v. Lee, 60 Ill., 501; Rowell v. Kline, 44 Ind., 290; McComb v. R. R., 70 N. C., 178; Raiford v. French, 11 Rich. (S. C.), 367.*

The court erred in rejecting the evidence as to the rental value, the taxes, the highest price offered, etc., as to the fruit farm.

The object in introducing this evidence is to show that plaintiff did not rely on any representation made by Arrington about the three thousand acres defendant agreed to convey to him. We have already seen that if plaintiff would have made the trade in the way he did, in the event the representations made had not been made, then he would not be entitled to recover of defendant any damages in the event said representations were false and he was damaged. If the effect of this evidence was to show that plaintiff would, probably, have made the trade he did, if the representations made had not been made, it should have been admitted. *Ward v. Young, 42 Ark., 554; Peterson v. Gresham, 25 Ark., 383; 1 Wharton on Evidence, secs. 20, 21; 1 Greenleaf on Evidence, sec. 511 a; 1 Phillips on Evidence, 598; Butler v. Watkins, 13 Wal., 464.*

"Relevancy," says Mr. Wharton, "is that which conduces to the proof of a pertinent hypothesis; a pertinent hypothesis being one which, if sustained, would logically influence the issues." "Hence," says he, "it is relevant to put in evidence any circumstance which tends to make the proposition at issue more or less improbable."

In *Peterson v. Gresham, supra*, Mr. Justice HARRISON, in delivering the opinion of the court, said : "It is an established rule, governing in the production of evidence, that 'the evidence offered must correspond with the allegations, and be confined to the point in issue,' but it is not necessary that it should bear directly upon the issue."

"It is admissable if it tends to prove the issue or constitutes a link in the chain of proof, although alone it might not justify a verdict in accordance with it." *1 Green. Ev., sec. 511 a; Phillips on Ev., 598.*

Assuming that Arrington represented the lands of defendant to be above overflow, would plaintiff have made the trade he did if such a representation had not been made? The facts.

defendant proposed to prove by the rejected evidence show that he would.

The first and second instructions are clearly erroneous. See authorities, *supra.*

The fifth instruction wholly wrong.

The measure of damages in cases like this is the difference in the value of the three thousand acres as it really was, and as Reppy was fraudulently induced to believe it was—that is to say, if he is entitled to any damages. *Marton v. Scull, 23 Ark., 289; Hubbell v. Meigs, 50 N. Y., 480; Campbell v. Hillman, 15 B. Mon., 508; Jackson v. Armstrong, 56 Mich., 65; Morse v. Hutchins, 102 Mass., 439; 3 Sutherland on Damages, 389; Sedgwick on Damages, 559–562; Miller v. Barber, 66 N. Y., 558; Platt v. Brown, 30 Conn., 336; Briggs v. Brushaber, 43 Mich., 330; Page v. Parker, 43 N. H., 363; S. C. 40 N. H., 47; Fish v. Hicks, 31 N. H., 535; Carr v. Moore, 41 N. H., 131; Stiles v. White, 11 Met., 356; Wright v. Roach, 57 Me., 600; Page v. Wells, 37 Mich., 415; Hamilton v. Billingsley, 37 Mich., 107; Foster v. Kennedy, 38 Ala., 359; Davis v. Elliott, 15 Gray, 90; White v. Smith, 54 Iowa, 233.*

But plaintiff insists that Arrington visited the place and saw for himself, and had no right to rely on the representations made by him. Arrington visited the place in company with Britton and Rapp, but he was not then an agent of defendant, and had no trade in view. It is said, "if one, in the course of his business as agent for another, obtain knowledge from which a trust would arise, and afterward become the agent of a subsequent purchaser in an independent and unconnected transaction, his previous knowledge is not notice to such other person for whom he acted." *Houseman v. Girard, etc., Mutual Association, 81 Pa. St., 262; Hood v. Fahnestock, 8 Watt., 489; Lawrence v. Tucker, 7 Greenl., 195; Plympton v. Preston, 4 La. Ann., 356; Mundine v. Pitts, 14 Ala., 84; Pepper v. George, 51 Ala., 190.*

Matlock v. Reppy.

The sixth instruction for defendant should have been given. *1 Story on Contracts, sec. 498; 2 Parsons on Contracts, 3 ed., star page 280, 5 ed., 782; Warburton v. Aken, 1 McLean, 460; Taylor v. Weld, 5 Mass., 116; Hanney v. Eve, 3 Cranch, 242.*

Also, the ninth. *81 Ind., 350.*

*Thos. C. McRae* and *Dan W. Jones,* for Appellee.

There can be no doubt, nor is it denied, that Arrington was the agent for appellant in the purchase of appellee's residence and fruit farm. Consequently, appellant is liable for any fraud which his said agent may have perpetrated upon appellee in this matter. *2 Parsons on Contracts, 779 and 780; Fitzsimmons v. Joslin, 21 Vt., 129; Morton v. Scull, 23 Ark., 289; Strayhorn v. Giles, 22 Ark., 517.* And although the contract was made between Arrington, acting as appellant's agent, and appellee, and was reduced to writing, still parol evidence is admissible to show the fraudulent representations made by Arrington to appellee to induce him to enter into the contract. *Plant v. Condit, 22 Ark., pp. 463–4; Hooper v. Chism, 13 Ark., 498; Tune v. Rector, ad., 21 Ark., 284; 1 Smith's Leading Cases, 273; Hanger, et al., v. Evins & Shinn, 38 Ark., 334.*

At common law an action on the case would always lie for fraudulent representations by the vendor as to the character of goods or land sold by him, when he makes them knowingly, wilfully and with the design to deceive the vendee, and when the vendee at the time has a right to, and does rely upon them, and is misled to his prejudice; and in this respect our statutes have made no change in the common law. *1 Chitty's Pleadings, 157 and note 3; Hanger et al. v. Evins & Shinn, 38 Ark., 334 and 339.* It was not necessary for the appellee to prove an offer to return the property before suit was brought, nor was it necessary to make such an offer. He had his election, either to demand a rescission of the contract or to bring his action for damages for deceit, and he elected to pursue the

latter remedy. *Hanger et al. v. Evins & Shinn, 38 Ark., 339;*
*Plant v. Condit, 22 Ark., 454; 1 Smith's Leading Cases, 252;*
*Williams v. Miller, 21 Ark., 469; Desha's exis. v. Robinson,*
*admr., 17 Ark., 228; Yeates et al. v. Pryor, 11 Ark., 58; Good-*
*win et al. v. Robinson, 30 Ark., 535; Withers v. Green, 9 How.*
*(U. S.), 213.*

In this case, however, as is well sustained by the proof,
appellee refused to take the appellant's land after ascertaining
its character, and notified him that he would not have it. He
refused a deed from appellant and has never claimed title to
any part of said 3000 acres. (Evidence of both appellant and
appellee in transcript.)

Appellant claims that his agent, Arrington, was deceived
by false representations of appellee as to the value of his resi-
dence and fruit farm; appellee denies any such false represen-
tation. But the claim is untenable in any event, because
Arrington examined the property before purchasing, and if he
was deceived it was through his own fault and laches and he
can not be heard to complain; and he, Arrington, testifies that
he relied chiefly on his own judgment of its value in trading.
On the other hand, appellee was compelled to rely on the rep-
resentations of Arrington as to the character of the lands on
the Ouachita river, because he had never seen them and was
then in the city of St. Louis, several hundred miles away from
said lands, and was at the place appointed by Arrington for
making the trade. He had a right to rely on Arrington's rep-
resentations, and the evidence clearly establishes the fact that
he did rely upon them, and that he was misled by them to his
prejudice. *2 Parsons on Contracts, 773; 1 Story on Contracts,*
*secs. 510 and 511; Righter et al., v. Roller et al. 31 Ark., 170;*
*Hanger et al. v. Evins & Shinn, 38 Ark., 334; Yeates v. Pryor,*
*11 Ark., 58; Winter v. Bandel et al. 30 Ark., 362; Hill v.*
*Bush, 19 Ark., 522; House v. Marshall, 18 Mo., 368; Langden*
*v. Green, 49 Mo., 363; Slaughter v. Gerson, 13 Wall., 379;*
*Gaty v. Holcomb, 44 Ark., 216.*

The court below, therefore, did not err in excluding the depositions of C. F. Lee, Sullivan, Frazier, and the other witnesses for appellant mentioned in his motion for a new trial, from nine to thirty-one inclusive, because they relate to the value of appellee's place in Hillsboro, Mo., and to the value of fruit trees, grape vines, etc., thereon, and the value of building materials, mechanics' work, etc. The appellant purchased upon the judgment of his agent, who had opportunity for personal inspection of these things, and not upon the representation of appellee. Said Arrington testified that he visited the said premises and examined them, and herein he is corroborated by the testimony of appellee and T. H. McMullin.

Upon such state of facts the above authorities decide that he is held to have purchased on his own judgment. Arrington testifies that he depended chiefly upon his own judgment of the value of appellee's premises, together with information obtained from T. H. McMullin with reference thereto. Although other circumstances may have induced appellee to wish to sell his property, such as being in debt, etc., still this can not shield appellant from the legal consequences of his agent's false and fraudulent representations. As remarked by this court in *Goodwin et al. v. Robinson, 30 Ark., 540,* "we do not think it comes with a very good grace from a party who has deceived and defrauded another by false representations, to shield himself from responsibility by claiming that other influences may have aided him in the deceit, contributed to his assistance, any more than it would to chide his dupe for his credulity." *Goodwin et al. v. Robinson, 30 Ark., 540; 2 Parsons on Contracts, 773; Winter v. Bandel et al., 30 Ark., 373.*

The jury were the proper judges of the question of fraud upon all the facts and circumstances of the case. They have determined that question and their verdict should not be disturbed. *Hanger et al. v. Evins & Shinn, 38 Ark., 346.*

The measure of damages is correctly given in appellee's fifth instruction.   The appellant having admitted in his answer that the price agreed to be paid by appellee for the 3000 acres of land was $5 per acre, amounting to $15,000, and there being no controversy upon this point, it was not error in the court to state this as the price agreed upon.   It was an admitted fact and the rule was correctly stated in said fifth instruction.   *Morton v. Scull, 23 Ark., 289; Murray v. Jennings, 42 Conn., 9.*

GEO. W. CARUTH, *Special Judge.*   Samuel A. Reppy, the appellee, in 1873 was the owner of an improved fruit farm in the State of Missouri, and put it on the market for sale or exchange.   On the 26th day of October, 1873, one R. E. Arrington, in company with others, came to Reppy's farm, looked over the place, including the orchard and premises generally, and closely examined the house.   Nothing came of this visit; but about seventeen days thereafter Reppy received a letter from Arrington, in which he proposed to purchase the farm, and pay for the same by assuming certain incumbrances thereon, amounting to about $10,000, and pay the balance in lands, "situated near the largest and one of the best towns in the state —Camden, in Ouachita county, lying on the west bank of the Ouachita river, abounding with the best and most splendid timber, and at least half of it the very best of river bottom land, all lying within from two to five miles of Camden, embracing upwards of three thousand acres, all in one body. This tract I will put in the trade at $5 per acre; worth the money I think today."

Two days later Reppy received a telegram requesting him to meet Arrington in St. Louis, which he did on the 16th or 17th day of November, 1873.   At which time Arrington reiterated the statements of his letter, and, on being questioned, stated that two-thirds of the Arkansas lands were above overflow, and that out of any 3000 acres Reppy might choose to

select there would be 2000 acres in a body, high, dry and level. These Arkansas lands were the property of John Matlock, the appellant, who was Arrington's brother-in-law, and who was the party making the trade, through Arrington, his accredited agent.

Upon this state of case, Reppy agreed to trade as Arrington proposed, and immediately executed a deed of conveyance to Matlock, reciting the consideration as $25,600 cash in hand paid, and delivered the same to Arrington, who went with it to Reppy's farm (the same purchased) and had Mrs. Reppy acknowledge it, Reppy being on the federal jury at St. Louis and could not leave. At the time of the delivery of the deed Arrington gave Reppy a writing binding Matlock to comply with the terms of the trade, to-wit, pay the incumbrances of about $10,000 and convey the 3000 acres of land. Reppy delivered possession of his farm to Matlock, and subsequently discovering that the land he was to receive in Arkansas was worthless, and not such as it had been represented, declined to accept a deed therefor, and brought suit in the nature of an action for deceit against Matlock, claiming $15,000 damages. There was a jury trial and a verdict of $10,000 found in favor of Reppy; motion for a new trial was made, overruled, and Matlock prosecuted this appeal.

The motion was based on numerous grounds, but those which require the notice of this court may be grouped as follows:

First. Errors in giving and refusing certain instructions therein set out.

Second. Errors in permitting or refusing the introduction of certain evidence.

The following are the instructions given and refused, to which action of the court objection is taken:

" 1.   If the jury find from the evidence in this case, that R.
E. Arrington, as the agent of the defendant, John Matlock, on
·or about the 15th day of November, 1873, or theretofore, for
the purpose of inducing the plaintiff, Samuel A. Reppy, to sell
to defendant his residence and fruit farm, and take in part pay
therefor three thousand acres of land of the defendant, to be
selected by plaintiff out of a body of seven thousand acres, did
falsely, fraudulently, knowingly and deceitfully make to plaintiff
representations concerning the quality, character and condition
·of said land of defendant as facts, and did by such representa-
tions knowingly lead plaintiff to believe that of any three
thousand acres of land which plaintiff might select in a body
out of defendant's said seven thousand acres of land, two-thirds
·or a greater portion thereof was entirely above overflow, suscep-
tible of cultivation, and that the plaintiff had never been in the
vicinity of said lands, and had no opportunity to know, and did
not know, anything of the character, quality and condition of
said lands of the defendant, and relied on said representations
concerning the same, and believed them to be true, and was
thereby induced to convey to the defendant his said residence
and fruit farm, and to agree and did agree to take in part pay-
ment therefor three thousand acres of said land of the defendant,
to be selected by plaintiff in a body, at five dollars per acre;
and further find that said lands of defendant, except a small
portion thereof, were not susceptible of cultivation by any ordi-
nary means, but were almost wholly subject to annual overflow
so as to be unfit for cultivation, and the plaintiff was misled, to
his injury, by such false and fraudulent representations, then
they, the jury, will find the issues for the plaintiff, and assess
his damages as herein directed.

"2.   If the jury find from the evidence that R. E. Arrington,
as the agent of the defendant, John Matlock, on or about the
·eighteenth day of November, 1873, or theretofore, for the pur-
pose of inducing the plaintiff, Samuel A Reppy, to sell to de-
fendant his residence and fruit farm, and take in part payment

Matlock v. Reppy.

therefor three thousand acres of land of the defendant, to be selected by plaintiff in a body out of a body of seven thousand acres, did falsely, fraudulently, knowingly and deceitfully represent to plaintiff as facts, and lead plaintiff to believe that out of any three thousand acres of said land of defendant the plaintiff might select in a body, at least two-thirds thereof was above high-water mark and susceptible of cultivation, or words to that or like effect; and if the jury further find that plaintiff had never been in the vicinity of said land of the defendant, and had had no opportunity to know, and did not know anything concerning their character, quality and condition, but relied upon said representations and believed them to be true, and was induced thereby to sell to defendant his said residence and fruit farm, and to agree to take in part pay therefor three thousand acres of the said lands of defendant at five dollars per acre; and also further find that said lands of the defendant were almost wholly subject to overflow so as they were not susceptible of cultivation by any ordinary means, and that plaintiff was misled to his injury by reason of such false and fraudulent representations, then the jury will find for the plaintiff and assess his damages as hereinafter directed.

"5. If the jury find the issues for the plaintiff, they will assess his damages at such sum as from the evidence they may find he has sustained, not to exceed the sum claimed in the complaint, and will regard as the measure of damages the difference between the real value of said three thousand acres of land as shown by the evidence and the price agreed to be paid therefor."

And the defendant asked the court to instruct the jury, among other things, as follows:

"5. If the jury believe from the said testimony, that the plaintiff, knowingly and wilfully, made to defendant, or his agent, false representations as to the costs of the dwelling house on said lands of plaintiff, and other improvements thereon, or as to the number of apple and peach trees growing on said lands, or

10——47

as to the costs of said land and the improvements thereon, or as to the encumbrances on said lands, or any part thereof, or concealed from defendant, or his agent, information of encumbrances on said lands within his possession, for the purpose of inducing, and did induce defendant to purchase said land, or any part thereof, and that defendant had a right to rely, and did rely on said representations, or any part thereof, and that defendant has actually been damaged and injured by such representations, or any part thereof, they will return a verdict in favor of defendant, and assess his damages in whatever amount they find he has been damaged."

The court struck out that portion of the instruction commencing with "as to the costs of the dwelling house, etc.," and ending with "the encumbrances on said land or any part thereof," and gave the same as amended.

"6. If the jury believe from said testimony, that plaintiff, before making the contract to sell, convey and exchange lands, as proven in the present trial of this action, the said contract being referred to in the complaint and answer herein, wilfully and knowingly made false representations to defendant, or his agent, with the fraudulent intent to cheat and defraud defendant, or in the making of said contract, was guilty of any fraudulent intention to cheat and defraud defendant, they will return a verdict in favor of defendant."

This the court refused and amended the same by interlining after the words, "any fraudulent intent to cheat and defraud defendant," and before the words, "they will return a verdict," the words, "and that defendant or his agent, was in such condition and so situated as to have a right to rely, and did rely on said false and fraudulent representations of the plaintiff," and gave the same so amended.

"7. The jury will wholly disregard and leave out of consideration all statements of defendant's agent, Arrington, as to the prospects of Camden, Arkansas, and its railroad prospects,

and as to the fertility of defendant's lands in the valley of the Ouachita river, and its capacity of producing corn and cotton, and its susceptibility of cultivation, and its being the best of river bottom lands, as such statements can only be matters of opinion."

The court struck out the words, "and its susceptibility of cultivation," and gave as amended.

"9. If the jury believe from said testimony, that plaintiff ascertained the character of said lands of the defendant, in the valley of the Ouachita river, and thereafter selected three thousand acres to be conveyed to him under his contract with defendant, without any complaint of misrepresentation on the part of the agent of the defendant, such designation was an acceptance of said lands, so far as the plaintiff was concerned, and that upon a tender of a deed by defendant, in compliance with the written contract of the nineteenth day of November, 1873, the plaintiff refused the same, they will find for defendant."

The evidence in this cause tends to establish the facts that the trade out of which the controversy has arisen was entered into at St. Louis, Missouri, where the appellee was at the time serving as a juror in the federal court. Reppy had never seen the Arkansas lands and knew nothing about them except what Arrington told him, which was, in effect, that two-thirds of it was above overflow, and that out of any three thousand acres Reppy might select, there would be two thousand acres in a body, high, dry and level—all of which was untrue.

Reppy was so situated he was compelled to rely on the representations so made, and traded accordingly. Arrington, on the contrary, had inspected and examined Reppy's fruit farm shortly before the trade, and had further opportunity to do so when he went there to have Mrs. Reppy sign the deed. The property was but a short distance from St. Louis, and therefore easy of access to Arrington, had he desired to make further examination. The Arkansas land, valued in the trade and rep-

sented to be worth fifteen thousand dollars, was shown to be worth three thousand dollars. Reppy refused to accept the deed for it, and it remained the property of Matlock. The situation of affairs, therefore, when the suit was instituted, was that Matlock had Reppy's fruit farm, valued in the trade at $25,000, in his possession, for which he had paid or assumed to pay certain encumbrances, which amounted to somewhere in the neighborhood of eleven thousand dollars, and his own land in Arkansas besides.

**1. Action for Deceit: False representations.** The principles of law, applicable to an action of deceit for damages, under the state of case which the evidence here tended to establish, have been well settled by the adjudications of this court.

In *Yeates et al. v. Pryor, 11 Ark., 58*, this court, speaking through Mr. Justice WALKER, held:

"It is not every misrepresentation of the vendor, in regard to the property sold, which will amount to fraud, be it ever so exceptional in point of morals. The misrepresentation in order to affect the validity of the contract must relate to some matter of inducement to the making of the contract, in which from the relative position of the parties and their means of information the one must necessarily be presumed to contract upon the faith and trust which he reposes in the representations of the other on account of his superior information and knowledge in regard to the subject of the contract; for if the means of information are alike accessible to both, so that with ordinary prudence or vigilance the parties might respectively rely upon their own judgment, they must be presumed to have done so; or if they have not so informed themselves, must abide the consequences of their own inattention and carelessness. Such representations therefore to amount to fraud must be of a decided and reliable character, holding out inducements to make the contract, calculated to mislead the purchaser and induce him to buy on the faith and confidence of the representations, and in the

Matlock v. Reppy.

absence of the means of information to be derived from his own observation and inspection, and from which he could draw, conclusions to guide him in making the contract independent of the representations of the vendor."

All subsequent opinions of this court are in perfect harmony with this statement of the law applicable to such cases.

*Yeates v. Pryor* was a bill in chancery, seeking the rescission of an executed contract on the ground of fraudulent representation as to land being above overflow. The same principles are applicable to suits at law for damages, because of similar false and fraudulent representation.

Actions of this character should be subjected to four tests in order to determine whether they may be maintained.

*a.* Was the fraud material to the contract; did it relate to some matter of inducement to the making of the contract?

*b.* Did it work an injury ?

*c.* Was the relative position of the parties such and their means of information such, that the one must necessarily be, presumed to contract upon the faith reposed in the statements of the other?

*d.* Did the injured party rely upon the fraudulent statements of the other and did he have a right to rely upon them, in full belief of their truth. *Yeates v. Pryor, 11 Ark., 60; Winter v. Bandel, 30 Ark., 373; Wilson v. Strayhorn, 26 Ark., 28.*

Squared by these well established principles, the instructions one and two as given for plaintiff were proper, and the fifth and sixth asked by defendant were properly refused.

The principal objection urged to instructions one and two, is that the jury were allowed to consider representations concerning the fertility of the lands and susceptibility to cultivation. This is not tenable as error for two reasons :

1. The instructions specially set out the fraudulent representations, that is to say, that the lands were above overflow,

2. SAME.

and susceptible of cultivation, and make the finding of such representation to have been made the test. But it is said, the words "susceptible of cultivation" expressed a mere matter of opinion relating to the character of the soil as to fertility, etc. We do not so understand it. The deceit claimed was the representation that the land was above overflow, and of course if it was it was susceptible of cultivation, whether it produced much or little. If it was covered with water of course it was not, and in leaving it to the jury to say whether it was susceptible of cultivation or not, the instructions did not require at its hands any inquiry as to the character, quality or fertility of the lands, but simply whether they could be worked at all, or in other words were above overflow.

2.    Admitting that there might be some objection to the expressions employed in instructions one and two concerning representations as the quality, character and condition of the land, being mere matters of opinion, the matter was remedied by the seventh instruction given at the instance of defendant in which the jury was instructed to disregard and leave out of consideration, all the representations objected to except "susceptibility of cultivation" and we have already seen that it was proper to let that go to the jury.

3. DAMAGES: Measure of, for false representations.
We come now to consider the fifth instruction, defining the measure of damages. This is objected to on the ground that the court assumed $15,000 as the price paid. The complaint charges that $15,000 was the price at which the Arkansas land was taken, and upon the basis of which the trade was made. This is admitted by the answer, and the court was justified in assuming that to be the sum agreed upon. In actions of deceit, the injured party may insist on having his damages measured by the difference in the value of the property purchased as it really was, and what it would have been had the representations made concerning it been true; or, if he prefer, he may content himself with the difference between the real value of

the property in its true condition and the price paid; or, the value placed upon the property in the transaction.

In this case, the plaintiff chose to resort to the latter course, and inasmuch as the price paid was admitted by the pleadings, the instruction as given was proper. This court, in *Goodwin et al. v. Robinson, 30 Ark., 540,* held that: "A party who has been induced to enter into a contract for the purchase of property by the false representations of the vendor, concerning the quantity or quality of the article sold, may have either of these remedies which he conceives it is most to his interest to adopt." "He may annul the contract, and by returning or offering to return the property purchased within a reasonable time entitle himself to recover whatever he had paid upon the contract; or he may elect to retain the property and sue for the damages he has sustained by reason of the false and fraudulent representations, *and in this event the measure of the damages would be the difference between the real value of the property, in its true condition, and the price at which he purchased it;* or, to avoid a circuity of action and a multiplicity of suits, he may plead such damages in an action for the purchase money, and is entitled to have the same recouped from the price he agreed to pay. *2 Kent Com., 8 ed., pp. 605 and 610; Sugden on Vendors, 381 star page; Sedgwick on Damages, pp. 445–6; Desha v. Robinson, 17 Ark., 246.*"

The instruction, as given, is in perfect harmony with the doctrine laid down by us in *Goodwyn v. Robinson,* nor is it in any wise inconsistent with the adjudged cases in other states, as we understand them.

It follows from what we have said, there is no error in granting the instruction objected to.

It is urged that the court improperly refused the fifth and sixth instructions as asked by the defendant. These instructions, as asked, did not express the law of the case, and ought not to have been given, even as amended, though as to that

part of it, appellant has no right to complain. If they had been given, they would in all probability have · misled the jury,. and justified them in resolving against the plaintiff, upon a belief on their part, that the plaintiff had not made any fraudulent representation whatever, without reference to its being material, or to the relative position of the parties and their means of in-- formation; and is condemned by the doctrine laid down by Judge WALKER in *Yeates v. Pryor, supra.*

4. Waiver of the fraud:— Estoppel.          This brings us to the last error suggested in relation to the instructions. It is insisted the ninth, as asked by defendant, should have been given. This was properly refused on two grounds. It is entirely abstract. There is no testimony whatever upon which it might have been based. On the contrary, the letter, in which it is claimed Reppy selected the lands, expressly states it to be a conditional acceptance, subject to further examination. Secondly, it is not the law applicable to actions of deceit. In such cases the injured party, by accepting and holding on to the property concerning which the false· representations have been made, after ascertaining their falsity,. produces neither a waiver, nor does it operate as an estoppel, to prevent his suit for damages. He is entitled to all the bene-- fits of his trade. These false representations are in the nature of warranties, and must be made good. He therefore waives· nothing by accepting what is offered, although not what he traded for. He may take that, and then bring his suit. *Ahrens· v. Adler, 33 Cal., 609; Murray v. Jennings, 42 Conn., 9; 3 Clark (Iowa), 584; 8 Ib., 370.*

Taking the instructions, as a whole, as given to the jury, we· are unable to perceive that any injustice has been done the defendant.

In the course of the trial, the plaintiff was permitted to read the depositions of sundry parties, speaking to certain declarations of Arrington, shortly after the trade, describing Reppy's.

Matlock v. Reppy.

farm in glowing terms, and to have the benefit of the testimony of N. T. Richmond, to the same effect, over the objection of defendant. This would have been irrelevant and incompetent, even if the agency of Arrington had been sufficiently established to have been in operation at the time the statements were made, which was by no means the case, and it was error to admit it. It is not, however, every admission of irrelevant or incompetent testimony, which constitutes a reversible error. We cannot see how, under the state of the pleadings, and the circumstances of this case, it could have worked any injury to defendant's case. The same may be said with much more force, as to the exclusion of the depositions offered by defendant to prove the value of Reppy's farm, as estimated by numerous deponents, but that testimony was clearly incompetent. It is sought to justify it upon the ground that if it could be shown that Reppy's farm was worth little or nothing, then the jury might infer that he did not rely upon Arrington's representations. We cannot so conclude. The valuation of the Arkansas land is not an open question. The pleadings settle that. There was no issue to which this proof was responsive. Besides, Arrington did not buy a "pig in a poke." He had opportunities of examination and inspection. He, in his haste to have the trade concluded, took the deed with him to Reppy's home (which was the place traded for), to have Mrs. Reppy sign it, and there, in the absence of Reppy, on the spot, closed that part of the transaction. The valuation was agreed to—so charged in the complaint and admitted by the answer. That being so, it was immaterial what the opinion of other people might have been touching it. It could not affect the recovery as to his false representations touching the Arkansas land.

The judgment must be affirmed.

Hon. B. B. BATTLE did not sit in this case.