## McCULLA v. BROWN.

### Opinion delivered February 25, 1924.

VENDOR AND PURCHASER—RESCISSION—MISREPRESENTATION.—Where a purchaser had had considerable experience with Johnson grass and was on the land for the purpose of inspecting it before she closed the deal, took immediate possession, and had ample opportunity to discover such grass before making the final payment, and took no action to rescind until after a slump in prices of lands and agricultural products, and some months after a suit had been instituted to foreclose a mortgage, *held* that she did not rely upon the vendor's representation that the farm was free from Johnson grass.

Appeal from Crawford Chancery Court; *J. V. Bourland,* Chancellor; affirmed.

. *E. L. Matlock* and *G. L. Grant,* for appellant.

The fact that Mrs. McCulla went upon the land and failed to discover the Johnson grass does not relieve appellee of the fraud practiced by his agent. 47 Ark. 335; 71 Ark. 99; 159 Ark. 479. Brown is responsible for the false statements made by his agent, as such statements were within the scope of his employment. 129 Ark. 498. Appellant relied upon the statements of the agent. Appellant gave appellee to understand she was not familiar with the character of land in suit, and a failure thereafter to reveal material defects amounted to fraud. 38 Ark. 343; 95 Ark. 136.

*Evans & Evans* and *W. H. Neal,* for appellee.

Where there is any evidence to sustain the finding of a chancellor it will not be overturned. 130 Ark. 470. For appellant to recover, it is necessary that she show that she relied upon the misrepresentations in making the purchase. 83 Ark. 403; 195 Pac. 263: If a purchaser, choosing to judge for himself, does not avail himself of the knowledge or means of knowledge open to him, he cannot be heard to say that he was deceived. 6 Clark & F. 232. Appellant's contention does not meet the test laid down by this court in 71 Ark. 97, and followed in 123 Ark. 492; 137 Ark. 397; 237 S. W. 99. Misrepresentation without injury affords no ground of relief. 53 Ark. 275. Where the means of knowledge is open to both parties, neither has a right to rely upon the other's statements. 11 Ark. 58; 16 Ark. 114; 31 Ark. 170; 46 Ark. 137; 47 Ark. 148.

Humphreys, J. On the sixth day of April, 1921, appellant instituted suit against appellees in the chancery court of Crawford County to rescind a sale of lands, known as the Lucas farm, made by them to her on the seventh day of May, 1920, for $28,000, $7,000 of which amount was to be paid in sixty days, and was paid September 17, 1920, and the balance to be paid later. The remaining deferred payments consisted of two items, one for $5,000, secured by a second mortgage upon a farm owned by appellant at Dyer, and $16,000, secured by a mortgage on the Lucas farm. It was alleged in the

bill that the sale was induced by two false and fraudulent representations made by appellees' agent who negotiated the sale, viz: that the farm had no Johnson grass upon it, and that it was securely protected by a levee from overflow from the Arkansas River.

Appellees filed an answer, denying the material allegations in the bill.

The cause was submitted to the court upon the pleadings and testimony, which resulted in a dismissal of appellant's bill for want of equity, from which is this appeal.

The following undisputed facts are disclosed by the record: In January, 1920, Giles T. Lucas and wife sold the farm in question to W. J. Jones for $21,000, $5,000 in cash and $16,000 in deferred payments, secured by a mortgage on said farm. In March, 1920, James and wife sold the farm to George Daugherty for $21,500. Daugherty purchased the farm subject to a $16,000 mortgage in favor of Lucas, and paid the difference in cash. Later in March, 1920, Daugherty sold the land to John B. Brown for $24,000. He was paid $8,000 in cash, and conveyed the farm to Brown, subject to the Lucas mortgage. In May, 1920, Brown sold the farm to appellant for $28,000, conveying same to her, subject to the Lucas mortgage. She gave Brown two promissory notes for the difference between the Lucas mortgage and the amount she agreed to pay him, one note being for $7,000 and the other for $5,000, each secured by a second mortgage on separate tracts of land. She afterwards sold the tract upon which she gave a second mortgage to secure the $7,000 note, and paid the larger part thereof on September 17, 1920. Under her agreement of purchase she was entitled to the rents of the Lucas farm for the year 1920, and, after closing the deal, went into the immediate possession and control thereof. One of her reasons for purchasing the Lucas farm was to get a farm close to her place of residence. She resided in Fort Smith, and the Lucas farm was on the Arkansas River, below Van Buren, near the end of the street-car

line. At the time of the purchase of the land the Lucas
farm had been plowed, bedded and harrowed for plant-
ing cotton. All the rich bottom lands in the vicinity
of the Lucas farm, including it, were infested with
Johnson grass, which made them more expensive and
harder to cultivate than lands not so infested. Appel-
lant had had considerable experience with such lands.
Three years before, she purchased eighty acres near this
farm from Brown, which was infested with Johnson
grass, and in September, 1920, sold same for nearly
twice as much as she had given for it. At the time she
purchased the Lucas farm, bottom lands found ready
sale in the market at very high prices, due to the high
prices of cotton and other products. In the fall of 1920
and winter of 1921 there was a great slump in the prices
of lands and agricultural products. Several years
before she purchased the Lucas farm the levee on it
washed away during a rise in the river, but subsequently
a new levee was built, and, in constructing it, provision
was made to turn the current of the river away from the
farm. After the new levee was built no encroachments
were made upon it by the river. Before purchasing the
land, appellant accompanied John Q. Adams, the agent
who negotiated the sale, to the land for the purpose of
inspecting same. While there she walked over a part
of it, but was told by the agent that all of it was like
that part which she had inspected. At the time she was
inspecting the land the tenant was at work on it, but she
made no inquiry of him concerning Johnson grass. After
inspecting the land, she expressed a desire to deal
directly with Mr. Brown, and was driven to his home
by the agent. She and Mr. Brown discussed the land
and deal at considerable length, in the absence of the
agent. She made no inquiry of him concerning Johnson
grass, but did ask him about the levee and whether the
land was secure against overflow. Brown informed
her that he regarded the levee as safe, and that the
engineer for the levee district was of the same opinion.
They discussed the terms, and he finally agreed to hold

the land for a week to see whether she could make any arrangement to make the cash payment. She returned at the expiration of that time, and the deal was consummated upon the terms heretofore set out.

The disputed facts disclosed by the record related to the issue of whether Allen represented to appellant that the farm was free from Johnson grass, and, if so, whether the misrepresentation induced her to make the purchase. Appellant, her son Henry, a Mrs. Carroll, who was visiting her, and Lucy Bell, who worked for her, all testified that Allen represented to her that no Johnson grass was upon the land. Appellant testified that she informed Allen that she would not buy the land unless it was free from Johnson grass, and that he assured her none was upon it. According to the testimony of appellant and her witnesses, these assurances were made to her at her home in Fort Smith, before she went to see the land. She also testified that she made only one visit to the land before she purchased same.

John Q. Adams testified that appellant did not ask him whether Johnson grass infested the land, and that he did not represent that the land was free from Johnson grass. He testified nothing was said between them about Johnson grass. The tenant on the place testified that appellant visited the farm again a few days after she was there with Mr. Allen, but that she said nothing to him when there. He said that she was not very close to him, but that he took her to be the same woman who was there with Mr. Allen.

Appellant contends that the decree of the chancellor was contrary to a clear preponderance of the testimony, and, for this reason, insists upon a reversal thereof. The tests laid down by this court in the cases of *Matlock* v. *Reppy*, 47 Ark. 148, and *Neely* v. *Rembert*, 71 Ark. 91, to determine whether sales should be rescinded on account of fraudulent misrepresentations, are as follows:

"a. Was the fraud material to the contract; did it relate to some matter of inducement to the making of the contract?

"b. Did it work injury?

"c. Was the relative position of the parties such that the one must necessarily be presumed to contract upon the faith reposed in the statements of the other?

"d. Did the injured party rely upon the fraudulent statements of the other, and did he have the right to rely upon them, in full belief of their truth?"

We are inclined to agree with appellant, that the weight of the evidence shows that Allen represented that the farm was free from Johnson grass, but we cannot agree with her that this misrepresentation induced her to purchase the land. She had had considerable experience with Johnson grass, and was upon the land for the purpose of inspecting same before she closed the deal. There is some testimony tending to show that she made a second investigation of the land before the deal was closed. The land was purchased by her on account of its being close to her place of residence, so that she could more easily look after it. She took immediate possession, and had ample opportunity to discover Johnson grass before she made the first payment of $7,000. This payment was not made until September following the purchase in May. She testified that she discovered Johnson grass upon the land in the fall of 1920, and she did not take any action until April 6, 1921. This was after the slump in prices of lands and agricultural products, and some months after Lucas had brought his suit to foreclose his mortgage. We think this great delay in taking action indicates that she was not induced to make this purchase on account of any representations made by Allen. Had she relied upon his representations she would, or should, have taken action upon the discovery of their falsity. The eighty acres she bought from Brown in 1918 almost doubled in value in three years, notwithstanding it was infested with Johnson grass. This particular farm was sold three times in quick succession, in the winter and spring of 1921, notwithstanding the fact that it was infested with Johnson grass. All the rich bottom lands in this vicinity were

infested with Johnson grass. These circumstances indicate that there was a ready market for lands at that particular time, irrespective of whether they were infested with Johnson grass. In other words, Johnson grass did not prevent people, at that time, from investing in lands of that character, either for speculative or agricultural purposes. When these facts are considered in connection with appellant's opportunity to inspect the land, her failure to complain until prices slumped, and that she did not bring action for a long time after she admits she discovered Johnson grass on the farm, we are impelled to the view of the learned chancellor, that the moving cause of this trade was not misrepresentations made by Brown's agent. We think the moving cause of the trade was the high prices of agricultural products and the rising value of lands.

The decree is therefore affirmed.