PRICE *v*. MABREY.

5-2088                              333 S. W. 2d 724

Opinion delivered April 4, 1960.

*Phil Loh, Charles H. Eddy,* for appellant.

*N. J. Henley,* for appellee.

ED. F. MCFADDIN, Associate Justice.   This is a suit for damages because of alleged misrepresentations. Appellant Price[1] was the plaintiff, and appellee Mabrey was the defendant; and from a decree in his favor for only $700.00, Price has appealed, claiming the damages to be inadequate.   There is no cross appeal.

Price was a school teacher in Florida and desired to purchase Arkansas lands for an investment.   The Mabrey tract was located; and when Price inspected it he found Keeling was cutting timber and operating a mill on the land, because of a timber deed from Mabrey. The timber deed was not of record, and Price inquired

[1] Mrs. Price was a co-purchaser with her husband, and also a party plaintiff and party appellant; but we refer to Price in the singular, since he acted for his wife. Equity jurisdiction—not questioned by defendant—was invoked because Price desired the amount of his damages to be credited on his future payments due on his sales contract.

of Mabrey as to the terms and provisions of the timber deed. Based on Mabrey's definite representations as to the timber deed, Price agreed to purchase the land; and the sales contract, dated August 15, 1955, contained this language, which gives rise to the present litigation:

"It is agreed and understood by all parties that there is a timber deed on said lands that will terminate within four years and in case saw mill is removed from said lands at any time, timber deed will become void. It is also understood that no timber is to be sold unless it is taken through saw mill on said property."

Price returned to Arkansas in the summer of 1956 and found that the Keeling mill, that had been on the land in August 1955, had ceased operations; that after Keeling had cut all the timber he wanted to process at his mill, he had sold the remaining oak and gum timber on the land to Crow for $700.00, and had sold the remaining pine timber on the land to Whillock for $1,000.00. These parties (Crow and Whillock) were still in the process of cutting their purchased timber from the land in the summer of 1956. They claimed that they had purchased from Keeling; and he claimed that he had a right—under the terms of his timber deed from Mabrey—to make such sales, regardless of his mill having been removed from the land. He had such right under the timber deed.

Price then filed the present suit against Mabrey for damages, claiming that Mabrey had misrepresented to him the provisions in the unrecorded timber deed from Mabrey to Keeling. In the trial, the said timber deed was introduced in evidence. It was dated October 16, 1954; and by its terms Mabrey sold to Keeling, "all the merchantable sawmill timber from the land". It also stated that Keeling, "shall cut and remove said timber within a period of four years from date hereof, and shall be entitled to all of that time within which to cut and remove said timber"; and the deed further provided, "At time mill is removed from said land and *work has ceased*, the timber deed will be returned" to Mabrey. (Emphasis supplied.)

Thus it is apparent that the timber deed covered all merchantable timber, with four years to cut and remove the same; and it was not until the mill had been removed from the land and all *"work has ceased"* that the timber deed could be terminated short of the four year period. The contract that Mabrey executed to Price stated definitely, as previously copied, that, "in case saw mill is removed from said land at any time, timber deed will become void"; and also, it said that "no timber is to be sold unless it is taken through saw mill on said property". Price testified as to the materiality of this last quoted representation:

"I was told that the timber there had been sold to an operator who was to have his mill set up on the property, and that when he moved the mill off the property and discontinued operation on that land, all remaining timber on the property would belong to whomsoever owned the property at the time the mill was moved. This was an important point to me, because I inquired whether or not he would be able to turn around after he had satisfied his wishes with the timber and sawed all he wanted, and sub-contract it, to someone else, because this might go on for several years until the expiration of the Timber Deed. I was told that this was not possible under the Timber Deed, and when and if he decided to quit cutting, anything left on the land would be mine if I bought the property."

The very eventuality, that Price tried to guard against in his sales contract, came about, and clearly emphasizes the difference of language between the timber deed and the sales contract. It is clear that Mabrey misrepresented to Price the provisions of the unrecorded timber deed, and that such material misrepresentation resulted in damage to Price. In short, Price made a case entitling him to damages. See *Yeates* v. *Pryor,* 11 Ark. 58; *Matlock* v. *Reppy,* 47 Ark. 148, 14 S. W. 546; and *Sullenberger* v. *O'Lee,* 209 Ark. 798, 192 S. W. 2d 543. As aforesaid, trial in the Chancery Court resulted in a decree for Price for $700.00; and Price brings this appeal, claiming that the amount awarded

him by the Chancery Court is too small. There is no cross appeal by Mabrey.

It was established that Keeling ceased operating his mill on the land and sold the remaining uncut timber to Crow and Whillock; that Crow cut and removed the oak and gum timber; and that Whillock put his own mill on the land and cut and processed the pine timber. The learned Chancellor thought the placing of the Whillock mill on the land fulfilled the provision in the sales contract which recited, "no timber is to be sold unless it is taken through saw mill on said property"; and, so, the learned Chancellor rendered judgment for Price for $700.00, being the amount that Keeling received from Crow, but refused to award Price any damages for the pine timber that Whillock cut. Viewing all the testimony, and the language used, and the situation existing between the parties, we think the evidence clearly shows that the language in the Mabrey-Price contract referred to the Keeling mill then on the land, and that Mabrey represented to Price that when Keeling ceased cutting timber from the land and processing it at his mill on the land, then the timber deed would be ended. Viewing it in this light, we are clearly of the opinion that Price is entitled to recover damages for the timber that Whillock cut from the land.

We come, then, to the more difficult question, and that is, the amount of the damages. The burden was on Price to prove his damages. In *Burbridge* v. *Bradley Lbr. Co.*, 218 Ark. 897, 239 S. W. 2d 285, we reviewed at length many of the cases of this Court on determining the value of timber cut and removed from the land; and we cannot say that Price established his damages in accordance with the Burbridge case. Crow testified that he cut 80,000 feet of oak timber and 14,000 feet of gum timber, and possibly some additional timber. But Crow stated that he received for the timber that he cut 7¢ per foot delivered in Pierce City, Missouri. From Crow's testimony there is no way of telling what this timber was worth at the stump. Whillock testified that he cut 150,000 feet of pine timber and that the

price varied from $15.00 to $20.00 per thousand; but he did not say whether such value was at the stump or after it was processed. These were the only two witnesses on the value of the timber, except Keeling's testimony, which we will subsequently mention.

The case of *Matlock* v. *Reppy,* 47 Ark. 148, 14 S. W. 546, was a case of damages for false representations in a land purchase contract; and, in discussing the measure of damages that the purchaser of the land might recover for the misrepresentation, this Court quoted from the earlier case of *Goodwin* v. *Robinson,* 30 Ark. 540, as to the damages:

" '. . . or he may elect to retain the property and sue for the damages he has sustained by reason of the false and fraudulent representations, *and in this event the measure of the damages would be the difference between the real value of the property, in its true condition, and the price at which he purchased it;* or, to avoid a circuity of action and a multiplicity of suits, he may plead such damages in an action for the purchase money, and is entitled to have the same recouped from the price he agreed to pay.' "

Under the above quotation,[2] Price's measure of damage was the difference between the "real value of the property" if the timber had not been sold by Keeling, and the value of the property with the timber, sold by Keeling, cut and removed. Keeling testified that he sold the oak and gum timber to Crow for $700.00, and the pine timber to Whillock for $1,000.00; and as near as we can see from this record, that is the only testimony that might go to satisfy the rule stated in *Matlock* v. *Reppy, supra.*

The learned Chancellor had this to say about the difficulty of determining the damages from the evidence: "The evidence as to the value of this particular timber in the stump which was cut and removed by Crow is

---

[2] In 1 Ark. Law Review 310, there is a case note entitled: "Measure of damages for defrauded vendor in actions of deceit", which suggests the uncertainty in awarding damages in such cases.

not very well established by the record; however, as the sale price to Crow was $700.00, the Court finds this to be the amount of damages suffered by plaintiffs for breach of the contract. . . ." Following the same line of reasoning, we conclude that the damages for the Whillock pine timber should be fixed at $1,000.00; and this, along with the $700.00 allowed for the Crow timber, makes a total of $1,700.00 that Price should recover, instead of the $700.00 allowed by the Chancery Court. The decree, therefore, is reversed, and the cause remanded, with directions to enter a decree for the appellants for the additional amount of $1,000.00 involving the pine timber sold to Whillock.