John P. KNOX and Paulette KNOX *v.*
Kenneth L. CHAMBERS and Judy CHAMBERS

CA 82-383                                        654 S.W.2d 582

Court of Appeals of Arkansas
Opinion delivered June 15, 1983
[Rehearing denied August 24, 1983.]

*Little, McCollum & Mixon,* by: *Rickard W. Hood,* for appellants.

*Williams & Williams,* for appellees.

MELVIN MAYFIELD, Chief Judge. Mr. and Mrs. Knox appeal from a judgment rendered against them in the Benton Circuit Court after a trial without a jury.

Appellants agreed to sell a home to the appellees in February of 1980. Appellants had lived there during part of 1979 but moved in November of that year. They told the real estate agent with whom they listed the property that there was a well on the property, that the water was good, and that the water supply had been adequate for household purposes while they lived there.

The real estate agent told the appellees what the appellants said about the well and appellees inspected the property before the sale was made, but testified that the electricity was off at the time and they were unable to test the water supply. After taking possession, they determined the water supply was not adequate and had a new well drilled and a new pump installed. Suit was then filed to recover those costs and it is an appeal from the judgment in appellees' favor that is now before us.

Appellants first contend that the court incorrectly applied the law of constructive fraud and that the court's judgment was clearly against the preponderance of the evidence. This contention is bottomed on the proposition that for constructive fraud to exist it must be established that the party making the representation alleged to be fraudulent had no reasonable basis for the representation at the time it was made. Then they argue that the evidence here shows that they had not lived on the property for some three months prior to the sale and when they did live there the well supplied an adequate amount of water for household purposes. Therefore, they say, the evidence shows they had a reasonable basis for the statements they made to their real estate agent about the well and the water.

We start with the point that the findings of the trial judge will be affirmed unless they are clearly against the preponderance of the evidence. Civil Procedure Rule 52 (a). We then look at those findings which are, in part, as follows:

That appellants made representations upon which appellees were intended to rely as to adequacy of the water supply, which representations were either absolutely false or made with no actual knowledge of

the present status of the water supply, and that appellants thereby asserted the representations to be true and reliable but appellants had no actual knowledge of the representations' veracity. That appellant's representations are therefore fraudulent.

Next we examine the law relied upon by the appellants. In *Kennedy* v. *E. A. Strout Realty Agency, Inc.,* 253 Ark. 1076, 490 S.W.2d 786 (1973), the court said:

"[R]epresentations are construed to be fraudulent when made by one who either knows the assurances to be false or else not knowing the verity asserts them to be true." *Lane* v. *Rachel,* 239 Ark. 400, 389 S.W.2d 621 (1965). In other words it is clear to us that Sutterfield asserted the adequacy of the water to be true when in fact he had no reasonable foundation for making such representations.

Thus, we perceive the court in *Kennedy* said that Sutterfield had no reasonable basis for what he said because he either knew his assurances to be false or else, not knowing the verity, asserted them to be true. This, we think, is what the trial court said in the finding of fact above quoted.

There was evidence that after the appellees moved into the house they could get only two or three inches of rusty water in the bathtub. They said there was not enough water to do the wash and that the pump worked but there was just no water to pump. The man who sold the property to appellants testified that the well was weak when he lived there. A man who worked on the pump for appellants said the well was weak and could be pumped dry. Only three days before the sale, one of the real estate agents told the appellants that one of appellants' former neighbors had said the well was not good but the appellant Mrs. Knox denied the well was not good and this assurance was passed on to the appellees. The appellants admitted they had actually checked the water only one time during the roughly four-month period when the property was vacant before appellees moved in and that the pump ran and then shut off;

however, it was the appellees' testimony that the electricity was not even on during that time.

Under the law and evidence we cannot reverse the trial judge's finding on the issue of liability. However, appellants also assert that the judge was wrong in his assessment of the damages awarded to appellees.

In this regard the judge found appellees had made reasonable and necessary expenditures in the amount of $2,940.50 to provide adequate water for household purposes to the property involved. The court found that this cost of repairs to the premises was a "fair and proper method of determining the difference between the value of lands bargained for and the actual value of the lands received."

Appellants argue that the correct measure of damages in this case would be the difference between the real value of the property in its true condition and the price at which it was purchased. They cite *Goodwin* v. *Robinson,* 30 Ark. 535 (1875), and *Held* v. *Mansur,* 181 Ark. 876, 28 S.W.2d 704 (1930), as authority for their contention. Those cases support appellants' contention.

This matter is discussed in D. Dobbs, *Handbook on the Law of Remedies* § 9.2 (1973). The author states that two general measures of damages are in use in this type of case. One, called the out of pocket or restitutionary rule, gives the plaintiff the difference between what he gave and what he got. This, of course, is the rule the appellants say is correct.

Another and more common rule, according to Dobbs, is called the loss of bargain rule which measures the damage by the difference between the value of the property as it actually is and the value it would have had if it had been as represented. Dobbs says this rule puts the plaintiff in the same position as if the fraudulent representations had been in fact true. Then Dobbs points out:

It is quite possible to do the same thing not by awarding him the differential between promised and

actual value, but by awarding him the cost of putting the property in the condition it was represented to have.

This, of course, is what the trial court did in this case.

In a footnote to the statement of the out of pocket rule, Professor Dobbs says "few states remain without inroads on the out of pocket rule." He then cites *Price* v. *Mabrey*, 231 Ark. 971, 333 S.W.2d 724 (1960), and says that case stated the out of pocket rule but applied the loss of bargain rule. We agree that this is the holding in *Price* and, as *Price* is a later decision, it appears that there has been at least a diminution of the authority of appellants' cases. Moreover, Dobbs points out that a third approach seems to be emerging under which the court may adopt for each case the rule that seems best suited to accomplishing substantial justice in the particular situation.

In the case of *Carter* v. *Quick*, 263 Ark. 202, 563 S.W.2d 461 (1978), under the facts there involved, the Arkansas Supreme Court chose, in a construction contract case, the cost of correcting defects, rather than the difference in value of the building as erected and what it would have had if erected properly. This case and rule was also followed by the Arkansas Court of Appeals in *Daniel* v. *Quick*, 270 Ark. 528, 606 S.W.2d 81 (1980).

Under the facts in the case at bar, we think the cost of repairs is a commonsense, fair and permissible rule and we affirm the trial court's judgment.

Affirmed.