Costs of this proceeding are assessed against the Respondent.

Clifton P. GENTRY, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 55A01–8801–CR–5.

Court of Appeals of Indiana,
First District.

May 31, 1988.

Rehearing Denied July 6, 1988.

Transfer Denied Oct. 24, 1988.

Byron C. Wells, Shelbyville, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

This is a consolidated interlocutory appeal brought by the defendant-appellant Clifton P. Gentry (Gentry). Gentry is charged with two separate charges of driving after his driver's license was forfeited for life pursuant to IND.CODE 9–12–3–2. One charge is pending in the Shelby Superior Court and the other in the Morgan Circuit Court. This appeal stems from a ruling in each of the two courts denying Gentry's motion to dismiss.

The underlying facts show that because of Gentry's driving record,[1] he was adjudged by the Bureau of Motor Vehicles (BMV) to be an habitual traffic offender (HTO) with a five-year driver's license sus-

---

1. *See* IND.CODE 9–12–1–4(d). Gentry had been convicted for ten misdemeanors and engaging in a speed contest.

pension resulting from the adjudication. After that, Gentry was found driving a motor vehicle in Marion County and was charged with, and entered a guilty plea to, driving while adjudged to be an HTO. The guilty plea was to a felony; however, under alternative sentencing provisions, he was sentenced as a misdemeanant. A lifetime license suspension was provided for in the plea agreement. Gentry filed several petitions for post-conviction relief to have some of the underlying traffic convictions set aside. During the pendency of the post-conviction appeals, Gentry was arrested in Shelby County for the charge upon which part of this appeal is based. Eventually, seven of the former traffic violations were reversed pursuant to the petitions for post-conviction relief. Because of the reversals, the Marion Municipal Court vacated its prior judgment effective back to the date of his conviction. Gentry was then charged in Morgan County with driving after forfeiture. With the vacating of the Marion Municipal Court judgment Gentry unsuccessfully sought to dismiss the driving after forfeiture charges in Shelby and Morgan counties.

Gentry states the issues as:

1. " .... may a court ignore the vacating of a criminal case that provides the essential element for the current charges ... ", and

2. " .... may a court suspend a driver's license without specific statutory authority."

■ The very essence of Gentry's argument is that the vacating of his HTO status by the Marion Municipal Court removes the foundation of his driving after forfeiture charges in Shelby and Morgan Counties. As a result, those charges should be dismissed. The State argues that although the question is novel in Indiana it is not new in that several sister states have addressed the question and, in the main, have found against Gentry's proposition.

■ We are of the opinion that the better-reasoned result is that a person who has been determined to be an habitual traffic offender by the Bureau of Motor Vehicles remains in that status until it is rescinded by the Bureau of Motor Vehicles. The policy for so holding has been well stated in *State v. O'Neill* (1984), Me., 473 A.2d 415:

A person may not take the law into his own hands by driving a motor vehicle in defiance of the State's determination that he is an habitual offender.

\* \* \* \* \* \*

There are strong policy reasons supporting Maine's statutory scheme of administrative determinations of habitual offender status for repeated violators of the traffic laws of the State and the imposition of criminal sanctions for future violations by the adjudicated habitual offender. Prohibiting imprisonment of habitual offenders for their repeated abuse of the motor-vehicle-operation privilege denied them by reason of their habitual offender status, when their status as such was determined in an earlier civil proceeding without the assistance of counsel or, as in the instant case, where the uncounseled defendant pled guilty to the charge of operating under the influence of intoxicating liquor, would impose on the State and on the courts such severe burdens as to frustrate for all practical purposes the legislative scheme designed to free the highways of the State from those drivers who by their conduct and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws of the State of Maine and for the orders of Maine courts and administrative agencies.

\* \* \* \* \* \*

In the instant case, as in *Lewis* [*v. United States* (1980), 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed 2d 198], the focus is not on reliability or non-reliability of the previous uncounseled conviction, but on the mere fact of conviction or the mere fact of the adjudication of habitual offender status. O'Neill's present conviction and sentence to imprisonment is not punishment for his earlier DUI conviction, but stems from his operation of a motor vehicle in direct contravention of the Secre-

tary of State's decision classifying him as an habitual offender and in open violation of the statutory prohibition purposely enacted to discourage repeated violations of traffic laws by that class of people. Maine has a legitimate interest in the use of imprisonment sanctions to deter prospective motor vehicle operators from flouting the civil disability classification of an habitual offender, so long as the classification stands unreversed, to assure maximum safety for all other travelers on the public highways of the State, notwithstanding any impairment in the proceedings leading to the habitual offender adjudication and regardless of the basis upon which the person was declared ineligible to operate a motor vehicle.

The interest in protecting the Indiana motorist is in lockstep with that of Maine.

 In a like manner we agree with the courts of Georgia that driving after being determined to be an HTO is an offense separate and distinct from the other offenses, *Smith v. State* (1982), 248 Ga. 828, 286 S.E.2d 709, and that the very essence of the crime is driving after being declared an habitual violator. *Webster v. State* (1984), 170 Ga.App. 102, 316 S.E.2d 503. Equally applicable to this appeal is the holding in *State v. Bell* (1987), 182 Ga.App. 860, 357 S.E.2d 596, at 597:

> It follows that the crucial date, insofar as habitual violator status is concerned, is the date of driving, not the date on which the status is challenged or set aside. If the person is driving despite notification that he may not do so because he has been declared an habitual violator, he is flaunting the law even if one or more of the underlying convictions is voidable.

Parenthetically, we would note that an infradispute is raised by Gentry in his reply brief saying that the State agreed to and is now bound by the Marion Municipal Court's setting aside Gentry's conviction. The State should not be able to argue for the first time on appeal, Gentry continues, that the setting aside of the conviction is not valid. This dispute, to the extent it has any validity is not material to the resolution of the main issue for the reason that Gentry's status as determined by the Bureau of Motor Vehicles is under scrutiny and not the Marion Municipal Court judgment which changed Gentry's driving status. For the purpose of this appeal, we assume the validity of that judgment.

 Gentry also argues that a person may only have his license suspended for life if he is convicted as a felon. The record shows that Gentry pled guilty to a felony in the Marion Municipal Court. The fact that he was given an alternative sentence as a misdemeanant does not alter the felony status. The trial court had authority to suspend his license.

Judgment affirmed.

NEAL and CONOVER, JJ., concur.