**Denver and Carol JOHNSON, Appellants (Defendants Below),**

v.

**Thomas and Barbara NAUGLE, Appellees (Plaintiffs Below).**

No. 88A01–8910–CV–426.

Court of Appeals of Indiana, First District.

Aug. 6, 1990.

Thomas A. Berry, Berry & Mills, Bloomington, David A. Reidy, Jr., Gosport, for appellants.

Thomas J. Lantz, Montgomery, Elsner & Pardieck, Seymour, for appellees.

ROBERTSON, Judge.

Denver and Carol Johnson appeal the judgment of the trial court finding them liable to Thomas and Barbara Naugle for the cost of repairing certain defects in the property known as "Holland House" purchased by the Naugles from the Johnsons. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

In the fall of 1987, Barbara and Thomas Naugle, having decided to move from their home in Arizona, visited various properties in Lawrence and Monroe Counties in Indiana. One such property was the home of Denver and Carol Johnson which was known as Holland House and was originally built in 1862. The Johnsons had owned Holland House since 1985 and had completed significant renovation work on the house during the intervening years. The Naugles visited Holland House on two occasions in October, 1987, during which they inspected the house, outbuildings, and surrounding acreage. The Naugles also made specific inquiries concerning the condition of the house in response to which the Johnsons assured the Naugles that Holland House had new wiring and that the furnace was only two years old and provided the house with adequate heat. The Johnsons also stated that Holland House had no defects or problems.

The Naugles agreed to purchase Holland House from the Johnsons for $125,000. The parties entered into a purchase agreement whereby the risk of loss for damage to the property remained with the Johnsons until closing. After the parties entered this agreement, the fireplace, hearth, and supporting floor were damaged by fire. The Johnsons made some repair effort, but did not inform the Naugles of the event. The Naugles later found the Johnsons' repair efforts to be inadequate. Closing took place in January, 1988. Two days after closing Denver Johnson telephoned the Naugles and informed them that the furnace was inadequate and needed to be upgraded.

Shortly after moving into Holland House in late March, 1988, the Naugles discovered the following defects in the home:

1) The furnace was at least ten years old and was probably inadequate to heat the house. Furthermore, the ductwork in the downstairs portion of the house was inadequate and, in the upstairs portion of the house, was inoperable.

2) The propane gas water heater was inoperable.

3) A single wallpipe connected the gas furnace, propane gas water heater, and fireplace to the flue, and this wallpipe was located within one or two inches of a floor joist causing the joist to be charred and weakened. Also, having only a single pipe had caused creosote to build up in the gas

appliances creating a fire hazard. Finally, having a single wallpipe was in violation of building and fire codes in the State of Indiana.

4) The electrical wiring in the house was defective in places.

5) The floor joists and beams were infected with dry rot and termites. Certain joists were damaged by fire.

6) The supporting beams of the porch were rotted.

7) The fireplace had been damaged by fire, apparently the fire which took place after the closing.

8) The septic system was defective.

9) The pond located on the property failed to hold water. The Naugles spent $12,350.05 to repair the listed defects.

On June 24, 1985, the Naugles filed suit against the Johnsons alleging fraud in the sale of real estate. The Naugles later amended their complaint against the Johnsons adding a claim for treble damages. The cause was tried before a jury on June 27–29, 1989. On June 29, 1989, the jury returned a verdict in favor of the Naugles for $43,627.83 which included $12,000 in actual damages, $10,500 in exemplary damages, $110 in court costs, $19,000 in reasonable attorney fees, and $2,017.83 for "costs of collection." On July 28, 1989, the Johnsons filed a motion to correct error which was subsequently denied by the trial court. Further facts will be recited as necessary to this opinion.

 The Johnsons first contend that the trial court committed reversible error in instructing the jury that damages could be

measured by the cost of repairing any defects on the property rather than by determining the difference between the true value of the property and its value as represented by the seller. The Naugles claim that the Johnsons waived their right to appellate review of this issue for several reasons.

The Naugles claim that the Johnsons failed to make a specific objection to the giving of the court's instruction on assessing damages.[1] Ind.Trial Rule 51(C) states:

"No party may claim as error the giving of an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

Counsel for the Johnsons made the following statement prior to the court's instructing of the jury:

"Your honor, it's our understanding that you have put together a set of proposed instructions, numbered one through sixteen, that includes a corporation [sic] of plaintiffs, ah, earlier instructions. Well, first of all, before we get to that, at the end of the case in chief again, or, the, all the evidence, we renew our motion for judgment on the evidence on the basis of damages and on basis of the weight of the evidence. And then, with regard to the instructions, we would ask the court to note for the record our objection to court's final number seven and final number eight. Thank you, judge."

Record at 746. We note that an objection which is not specific preserves no error on appeal. *Reynolds v. Strauss Veal, Inc.* (1988), Ind.App., 519 N.E.2d 226, 228,

---

1. Additionally, the Naugles claim that the issue was waived because the Johnsons were actually attempting to appeal an award of excess damages. Under Ind. Trial Rule 59(A)(2) such an issue must be raised in a motion to correct error before it can be appealed. However, the Johnsons' claim is based on the premise that the jury was erroneously instructed as to the law applicable to the case, not that the jury award was excessive necessarily. The Naugles also claim that because the Johnsons filed a *motion to* correct error, they were required to include in that motion all issues they intended to appeal and that failure to include a particular issue in the motion to correct error should result in

waiver when seeking appellate review. The Naugles are mistaken. Ind. Trial Rule 59(A) provides that only where a party seeks to address newly discovered evidence or excessive or inadequate damages must the issues be raised in a motion to correct error prior to appellate review, "[a]ll other issues and grounds for appeal appropriately preserved during trial may be initially addressed in the appellate brief." We have already determined that the Johnsons are seeking to appeal an issue other than the mere quantity of damages awarded, and no party has mentioned newly discovered evidence. Therefore, a motion to correct error on this issue was not mandated by T.R. 59.

*trans. denied; Dunkelbarger Construction Co. v. Watts* (1986), Ind.App., 488 N.E.2d 355, 358; *see also Lund v. State* (1976), 264 Ind. 428, 345 N.E.2d 826; *Harper v. Goodin* (1980), Ind.App., 409 N.E.2d 1129; *Brown v. Indiana Dept. of Conservation* (1967), 140 Ind.App. 638, 225 N.E.2d 187, *trans. denied; Lee v. Dickerson* (1961), 131 Ind.App. 422, 171 N.E.2d 698.

The Johnsons argue that the objection cited above is specific because it refers back to the argument to the court made by the Johnsons' counsel when he moved for judgment on the evidence. At that time an extensive discussion took place concerning whether or not the cost of repairing the defects in Holland House was an inappropriate measurement of damages. Although they cite no authority on point, we assume that the Johnsons are attempting to liken their bare-boned assertion, "we would ask the court to note for the record our objection to court's final number seven and final number eight," to the defense counsel's objection to testimony in the case of *Kail v. State* (1988), Ind.App., 528 N.E.2d 799, 804–05, *trans. denied.* In that case this court held the defendant's continuing objection was sufficient to preserve error where a hearing on a motion to suppress was conducted on the day of trial and was included in the record on appeal. In addition, the trial court was informed that the objection was a renewal of the objection made earlier that day at the suppression hearing, and the defendant requested specifically that rather than repeating himself each time, the court show a continuing objection had been made. The trial court agreed to do so, and this court held the objections to be sufficient.

However, unlike the *Kail* case, here counsel failed to specifically connect the Johnsons' objections to the trial court's instructions to the discussions held on the Johnsons' motion for judgment on the evidence. Furthermore, the Johnsons never sought to have their objection accepted as a continuing objection. Therefore, we hold the Johnsons' objection to the trial court's

instruction to be insufficiently specific to warrant review.[2]

■ The Johnsons next claim that the trial court erred in denying their motion for judgment on the evidence made at the end of the Naugles' case-in-chief. Our standard of review for a challenge to a ruling on a motion for judgment on the evidence is the same standard utilized by the trial court in making its decision. We look only to the evidence and reasonable inferences therefrom most favorable to the nonmoving party. The motion should be granted only where there is a complete failure of proof, that is where there is no substantial evidence or reasonable inference from the evidence supporting an essential element of the claim. *Whisman v. Fawcett* (1984), Ind., 470 N.E.2d 73, 79; *First Bank and Trust Co. v. Bunch* (1984), Ind.App., 460 N.E.2d 517, 518–19, *trans. denied.* The Johnsons claim that in order to collect damages for fraud in the sale of real estate, the Naugles were required to present evidence tending to show the difference between the value of their home as represented by the Johnsons and the value of the home as it actually existed. Furthermore, according to the Johnsons, the Naugles' failure to put forth any evidence tending to show the difference in the value of Holland House translated into a failure to demonstrate an element necessary to an action of fraud, and judgment should have been entered in favor of the Johnsons when the Naugles closed their case-in-chief without demonstrating the necessary elements. The Naugles do not contend that they put forth the evidence deemed requisite by the Johnsons. Rather the Naugles claim that the evidence relating to the difference in the value of Holland House did not have to be presented in terms of before and after appraisals, but could be demonstrated by putting into evidence the cost of the repairs made by the Naugles. Such evidence, according to the Naugles, was sufficient to meet the damages element for a claim of fraud in the sale of real estate. We agree.

**2.** We further note that the Johnsons violated Ind. Appellate Rule 8.3(A)(7) when they failed to set out their objection to the trial court's instruction in their appellate brief.

Generally, "the rule for the measure of damages for fraud in the sale or exchange of property is the difference in the actual value of the property received by the party alleged to have been defrauded and the value of such property at the time, had it been as represented to be by the vendor." *Loer v. Neal* (1956), 127 Ind.App. 246, 265, 137 N.E.2d 728 (quoting *Mowes v. Robbins* (1918), 68 Ind.App. 82, 85, 120 N.E. 51); *see also Captain & Co. v. Stenberg* (1987), Ind.App., 505 N.E.2d 88, 98, *trans. denied; Large v. Gregory* (1981), Ind.App., 417 N.E.2d 1160, 1164; *Sriver v. Maley* (1958), 128 Ind.App. 619, 626, 151 N.E.2d 518. However, in many jurisdictions an alternative measure of damages for fraudulent concealment has been adopted which is "the cost of repairing the property to make it conform to the condition it would have had without defects." *Posner v. Davis* (1979), 76 Ill.App.3d 638, 32 Ill.Dec. 186, 191, 395 N.E.2d 133, 138; *see also Knox v. Chambers* (1983), 8 Ark.App. 336, 654 S.W.2d 582; *Orkin Exterminating Co. v. Bryan* (1982), 163 Ga.App. 804, 294 S.E.2d 683, 684; *Flakus v. Schug* (1983), 213 Neb. 491, 329 N.W.2d 859, 864; *Hall v. Warrington* (1986), 78 Or.App. 381, 717 P.2d 183, 186; *Cushman v. Kirby* (1987), 148 Vt. 571, 536 A.2d 550, 554; *Ollerman v. O'Rourke Co.* (1979), 94 Wis.2d 17, 288 N.W.2d 95, 112–13; 13 Am.Jur.2d *Fraud and Deceit* § 357 (1968); 13 A.L.R.3d 922 (1967). *Cf. Cory v. Villa Properties* (1986), 180 Cal.App 3d 592, 225 Cal.Rptr. 628; *Central Mutual Insurance Co. v. Schmidt* (1957), 152 Cal.App.2d 671, 313 P.2d 132; *Hibbler v. Fisher* (1985), 109 Idaho 1007, 712 P.2d 708; *Koehler v. Stenerson* (1953), 74 Idaho 281, 260 P.2d 1101. As stated in *Cushman:*

> "If the injury is temporary in the sense that restoration can cure the harm, the reasonable cost of repair may serve the need and provide adequate and fair compensation. If the damage is permanent and beyond full repair, the variance in the value of the property before and after injury often affords the better guide to a just award. It all depends upon the character of the property and the nature and extent of injury."

*Cushman v. Kirby*, 536 A.2d at 554 (quoting *Bean v. Sears, Roebuck & Co.* (1971), 129 Vt. 278, 276 A.2d 613, 616). Like the situation in *Cushman,* the defect in the present case was temporary and subject to cure; therefore, the reasonable cost of repair provided fair and adequate compensation to the Naugles.

In the case of *Orkin Exterminating,* the court noted that the generally accepted measure of damages, the difference between the value of the thing sold and the value of the thing had it actually existed as represented, was the same measure of damages applied where a builder fails to complete the building of a house according to a contract, then noted that "this difference in value may be shown by evidence of the reasonable cost of correcting the defect." *Orkin Exterminating,* 294 S.E.2d at 684. We consider the case presently before this court to be similar to a case in which a builder erects a house which is not in accord with the building contract. In both situations, the prospective homeowner is denied the end-product originally bought and bargained for, and, given that the purpose of awarding compensatory damages is to place an individual in the position he or she would have been in absent any defect, we conclude that an accurate measure of those damages is the cost of conformation. *See Captain & Co.,* 505 N.E.2d at 98. As in *Knox,* we have applied the cost of conformation rule in the present case because it is a "commonsense, fair, and permissible rule." *Knox,* 654 S.W.2d at 582.

In the present case the Naugles presented evidence to the court showing the amount they spent in curing the defects in Holland House, and presented testimony establishing that the cost of this repair work was within reason, thereby making a prima facie showing of the damage element of their fraud action. Therefore, contrary to the Johnsons' claim, there was substantial evidence supporting the damage element of the Naugles' claim of fraud, and the trial court did not err in denying the Johnsons' motion for judgment on the evidence.

 The Johnsons next contend that the trial court erred in awarding the Naugles fees for attorney office support and litigation support under IND. CODE 34–4–30–1 which allows a plaintiff who has suffered a pecuniary loss as the result of a violation of I.C. 35–43 to sue the defendant for treble damages, reasonable attorney's fees and certain other costs.

Specifically, I.C. 34–4–30–1 provides:

If a person suffers a pecuniary loss as a result of a violation of I.C. 35–43, I.C. 35–42–3–3, or I.C. 35–42–3–4, the person may bring a civil action against the person who caused the loss for the following:

(1) An amount not to exceed three (3) times the person's actual damages.

(2) The costs of the action.

(3) A reasonable attorney's fee.

(4) Actual travel expenses that are not otherwise reimbursed under subdivisions (1) through (3) and are incurred by the person suffering loss to:

(A) have the person suffering loss or an employee or agent of that person file papers and attend court proceedings related to the recovery of a judgment under this chapter; or

(B) provide witnesses to testify in court proceedings related to the recovery of a judgment under this chapter.

(5) A reasonable amount to compensate the person suffering loss for time used to:

(A) file papers and attend court proceedings related to the recovery of a judgment under this chapter; or

(B) travel to and from activities described in clause (A).

(6) Actual direct and indirect expenses incurred by the person suffering loss to compensate employees and agents for time used to:

(A) file papers and attend court proceedings related to the recovery of a judgment under this chapter; or

(B) travel to and from activities described in clause (A).

(7) All other reasonable costs of collection.

Because I.C. 34–4–30–1 is "largely a penal measure," we must construe the statute strictly. *Roake v. Christensen* (1988), Ind. App., 528 N.E.2d 789, 792.

The Johnsons correctly note that in its verdict the jury awarded the Naugles $19,-000 in reasonable attorney's fees. The Johnsons claim, and the Naugles apparently concede, that according to the evidence presented at trial only $17,195.50 of this amount is attributable to actual attorney fees. The remaining $1,805 was awarded for approximately 80 hours of service provided by the attorney's office staff. This service included activities such as typing and copying.

"Reasonable attorney's fees" has been interpreted by this court as including "only those amounts as paid [sic] compensation to the attorney." *Midland–Guardian Co. v. United Consumers Club, Inc.* (1986), Ind.App., 499 N.E.2d 792, 801. We, therefore, hold that the trial court erred in awarding support staff costs as an element of reasonable attorney's fees.

The Naugles cite a United States Supreme Court case in which the majority of the Court adopted the contrary view. In *Missouri v. Jenkins* (1989) — U.S. —, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229, 241 Justice Brennan writing for the majority of the Court wrote:

"Clearly, a 'reasonable attorney's fee' cannot have been meant to compensate only work performed personally by members of the bar. Rather, the term must refer to a reasonable fee for the work product of an attorney. Thus, the fee must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product for which an attorney bills her client; and it must also take account of other expenses and profit..."

"All else being equal, the hourly fee charged by an attorney whose rates include paralegal work in her hourly fee, or who bills separately for the work of paralegals at cost, will be higher than the hourly fee charged by an attorney competing in the same market who bills

separately for the work of paralegals at 'market rates' ... Thus, if the prevailing practice in a given community were to bill paralegal time separately at market rates, fees awarded the attorney at market rates for attorney time would not be fully compensatory if the court refused to compensate hours billed by paralegals or did so only at 'cost.' *Similarly, the fee awarded would be too high if the court accepted separate billing for paralegal hours in a market where that was not the custom.*" (Emphasis added.)

In *Jenkins,* the Court was interpreting a federal statute granting attorney fees to the prevailing party in suits involving various federal civil rights legislation. *See* 42 U.S.C. § 1988. This court is not bound by such a decision when making a determination involving a tangentially related provision of state legislation. *McFarland v. Phend and Brown, Inc.* (1974), 161 Ind. App. 695, 317 N.E.2d 460, 462, *trans. denied.* We therefore decline to follow the Supreme Court's majority opinion in *Jenkins* as it relates to the inclusion of support staff fees in reasonable attorney fees. Indeed, we find the dissenting opinion of Chief Justice Rehnquist to be persuasive and in accord with existing Indiana opinion on this issue. The Chief Justice wrote:

"[T]he statute [42 U.S.C. § 1988] itself simply uses the very familiar term 'a reasonable attorney's fee,' which to those untutored in the Court's linguistic juggling means a fee charged for services rendered by an individual who has been licensed to practice law. Because law clerks and paralegals have not been licensed to practice law in Missouri, it is difficult to see how charges for their services may be separately billed as part of 'attorney's fees.' And since a prudent attorney customarily includes compensation for the cost of law clerk and paralegal services, like any other sort of office overhead—from secretarial staff, janitors, and librarians to telephone service, stationery, and paper clips—in his own hourly billing rate, allowing the prevailing party to recover separate compensa-

tion for law clerk and paralegal services may result in 'double recovery.' "

—— U.S. at ——, 109 S.Ct. at 2476, 105 L.Ed.2d at 248–49. Chief Justice Rehnquist then wrote:

"Under the Court's logic, prevailing parties could recover at market rates for the cost of secretaries, private investigators, and other types of lay personnel who assist the attorney in preparing his case, so long as they could show that the prevailing practice in the market was to bill separately for these services. Such a result would be a sufficiently radical departure from the traditional concept of 'attorney fees' that I believe new statutory authorization should be required for it. That permitting separate billing of law clerk and paralegal hours at market rates might 'reduc[e] the spiraling cost of civil rights litigation' by encouraging attorneys to delegate to these individuals tasks which they would otherwise perform themselves at higher cost, *ante,* at 109 S.Ct. 2471, and n. 10, may be a persuasive reason for Congress to enact such additional legislation. It is not, however, a persuasive reason for us to rewrite the legislation which Congress has in fact enacted."

*Id.* So too shall we refrain from enlarging upon the meaning of term "reasonable attorney's fees" as used in I.C. 34–4–30–1. We note that since the restrictive definition of attorney's fees was published in *Midland–Guardian* in 1986, our legislature has amended I.C. 34–4–30–1 and expanded the costs for which an aggrieved party can collect damages. However, the legislature has not altered its wording in regard to "attorney's fees." Because the trial court erred in awarding the cost of the attorney's support staff as a separate part of reasonable attorney's fees we must reverse the jury's verdict insofar as it was inconsistent with this opinion and remand this case with instructions to modify the award of reasonable attorney fees so that it reflects the $17,195.50 reflected in the record.

■ The Johnsons next claim that the trial court erred in awarding the Naugles approximately $2,000 in costs of collection.

The Johnsons claim, and again the Naugles apparently concede that this $2,000 was a compilation of the cost of the following items: Westlaw, telephone calls, mileage, depositions, postage, copies, process server and videotaping. As stated previously, the jury awarded these costs under I.C. 34-4-30-1(7) which allows for the recovery of "[a]ll other reasonable costs of collection." We agree with the Johnsons that a strict construction of this provision reveals that collection costs include costs associated with pre-judgment garnishment, proceedings supplemental, sheriff's sales and other costs directly associated with collecting the judgment. Given this construction, we cannot hold that amounts expended on Westlaw, telephones, mileage, depositions, postage, copies, process servers, and videotapes utilized at trial correctly fall under the purview of I.C. 34-4-30-1(7). Therefore, we hold that the trial court erred in entering judgment on the jury's award of approximately $2,000 in "costs of collection" and remand this case for modification to reflect our holding herein.

The Johnsons next contend that the trial court erred in refusing to give the following instruction No. 6 which was tendered by the Johnsons:

"The mere fact that a representation is false does not raise [a] presumption that person [sic] making it had knowledge of its falsity. Intent to defraud is not presumed from the mere fact that a motive may have existed or did exist."

Record at 142. Reversible error occurs when the trial court refuses to give a tendered instruction which is a correct statement of the law, is applicable to the facts of the case, and is not adequately covered by the other instructions given. *Brokers, Inc. v. White* (1987), Ind.App., 513 N.E.2d 200, 203; *F.W. Woolworth Co., Inc. v. Anderson* (1984), Ind.App., 471 N.E.2d 1249, 1255, *trans. denied.*

The Johnsons cite to the case of *Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 364, to support their claim that instruction No. 4 is a correct statement of the law in Indiana. In *Travelers*, the Supreme Court of Indiana stated:

"The mere fact that a representation is false does not raise a presumption that the person charged with making it had knowledge of its falsity. Moreover, an intent to defraud is not presumed from the mere fact that a motive may have existed or did exist."

We agree with the Johnsons that their instruction No. 6 closely tracked the language employed by the Supreme Court in *Travelers*. Therefore, the Johnsons have demonstrated one prong of the three-part test for obtaining reversal for the refusal to give a tendered instruction. A question still remains as to whether the instruction was applicable to the facts of the present case or adequately covered by other instructions.

We note at this juncture that the Supreme Court relied on language from 37 Am.Jur.2d *Fraud and Deceit* § 446 (1968) when making the statement quoted previously from *Travelers*. In that same section of American Jurisprudence the following statement is made:

"Ordinarily, intent to deceive is not susceptible of direct proof, but can be established only by circumstantial evidence. As heretofore stated, fraud may be inferred from circumstances. Thus, there are cases where the wilfulness of false representation is presumed from the circumstances of the transaction and the situation of the parties and where, on the theory that one must be presumed to have intended the necessary, natural, or probable consequences of his own voluntary and deliberate act, a fraudulent intent may be imputed or inferred. Accordingly, the existence of the elements of intent and knowledge may be inferred from circumstances."

The trial court in the present case covered the jury's power to infer intent or knowledge in the following instruction No. 12:

"While the Naugles must prove all the essential elements of fraud by a preponderance of the evidence, direct proof is not required. Rather it is sufficient to establish fraud by circumstantial evidence. For example, an unqualified statement that a fact does or does not

exist implies that a person making the statement knows the facts and a fraudulent purpose may be inferred if the statement is false and the person to whom the statement is made relies upon it. Therefore, if you find by a preponderance of the evidence that the Johnsons made an unqualified statement that a fact did or did not exist, you may infer that the Johnsons had knowledge of this fact and if you further find that this fact was false and the Naugles relied upon it, you may infer a fraudulent purpose on the part of the Johnsons."

Record at 170.

Both instruction No. 4 as tendered by the Johnsons and instruction No. 12 as given to the jury by the trial court relate to the Naugles' burden of proof in demonstrating the element of intent. The trial court's instruction is a positive statement of the Naugles' burden, while the Johnsons' instruction is simply a statement of what showing should be deemed inadequate. We therefore hold, that the Johnsons' tendered instruction No. 4 is adequately covered by the trial court's instruction No. 12 and, therefore, the trial court's refusal to give the Johnsons' instruction No. 4 to the jury cannot be deemed reversible error.

We further note that the facts of the present case would appear to make the Johnsons' instruction No. 4 unnecessary. Contrary to the Johnsons' claims on appeal, the circumstantial evidence used to demonstrate the Johnsons' fraudulent intent was composed of more than the Johnsons' statements concerning the condition of Holland House. The following evidence could all be considered when determining the Johnsons' intent:

—the fact that the Johnsons did not reveal to the Naugles that a prior prospective buyer refused to buy the house after an inspector found various defects in the home.

—the fact that the Johnsons had actual knowledge of the dry rot and termite damage to the floor joists, yet filled their basement with wood making it difficult if not impossible to discover the defect upon inspection.

—the fact that the contractor whom the Johnsons claimed rewired Holland House claimed at trial that he did not rewire the home.

—the fact that various sections of the home were sealed or disguised by the Johnsons when the Johnsons conducted their tour of the home.

Given this and other evidence, the trial court could well have determined that an instruction denying the existence of a presumption of an intent to defraud based merely on the falsity of the Johnsons' statement would be superfluous in the present case. Therefore, we conclude that while the Johnsons' instruction No. 4 correctly stated the law, the burden of proof was adequately explained in the trial court's instruction No. 12 and the facts of the case made the Johnsons' instruction inapplicable. The trial court committed no error in refusing to give the Johnsons' instruction No. 4 to the jury.[3]

---

3. The Johnsons also contend in conjunction with the giving of instruction number 12 that because the Naugles sought treble damages pursuant to 34-4-30-1, which allows recovery of such damages where the defendant is found by a preponderance of the evidence to have violated a provision of 35-43, the trial court should have limited the inferences made by the jury concerning the intent of the defendants. In support of this position the Johnsons cite to the pertinent section of I.C. 35-43-5-3(a)(6) from which they proceed to misleadingly quote. In its unadulterated form I.C. 35-43-5-3(a)(6) reads as follows:

"(a) A person who:
(6) with intent to defraud, misrepresents the identity of the person or another person

or the identity or quality of property; commits deception, a Class A misdemeanor."
The Johnsons then quote I.C. 35-41-2-2(a) which states that "[a] person engages in conduct 'intentionally' if, when he engages in conduct, it is his conscious objective to do so." From this language the Johnsons somehow conclude that a heightened standard is demanded stating, "Thus, when considering a claim for treble damages the jury enjoys less freedom to infer and presume its way to liability than with a mere claim for fraud damages (fraud requires only a misrepresentation 'recklessly made'.)" Appellant's brief at 32. Such reasoning is specious and completely ignores well founded case law stating that even in criminal cases where the burden of proof is beyond a reasonable doubt, "because intent is a mental state, a trier of fact

The Johnsons' final contention is that the evidence presented at trial was insufficient to support the trial court's award of treble damages.

"In reviewing the sufficiency of the evidence in a civil case, we will neither weigh the evidence nor judge the credibility of witnesses. Viewing only the evidence most favorable to the judgment and the reasonable inferences which may be drawn therefrom, we will affirm that judgment if there is substantial evidence of probative value to support it." (Citations omitted.)

*James v. Brink and Erh, Inc.* (1983), Ind. App., 452 N.E.2d 414, 416. Having discussed the facts of the present case at length throughout this opinion, we will refrain from doing so again. Suffice it to say that having reviewed the record extensively we consider the evidence presented sufficient to support the jury's award of exemplary damages which amount to substantially less than three times the Naugles's actual damages.

### Conclusion

The Johnsons waived their right of review concerning instruction number seven regarding the measure of damages. Furthermore, the trial court did not err in denying the Johnsons' motion for judgment on the evidence because the "cost of conformity" is an acceptable measure of damages in an action based on fraud in the sale of real estate. We also conclude that the trial court did not err in refusing to give the Johnsons' instruction regarding the burden of proof for the intent element of fraud where the substance of that instruction was covered by another instruction given and the facts of the present case made the particular language utilized in the Johnsons' instruction inapplicable. We further hold that the evidence presented at trial was sufficient to support the jury's award of exemplary damages to the Nau-

gles. However, we also conclude that the trial court erred in awarding the cost of office support staff to the Naugles as an element of "reasonable attorney's fees" and that the trial court erred in awarding amounts spent on litigation preparation as "reasonable costs of collection" under I.C. 34-4-30-1. Therefore, we remand this cause to the trial court with instructions to modify the final judgment to comport with our opinion herein.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

RATLIFF, C.J., and BAKER, J., concur.

---

must usually resort to reasonable inferences based upon examination of surrounding circumstances to determine whether, from the person's conduct and the natural consequences that might be expected from that conduct, a showing or inference of intent to commit that conduct exists." *Metzler v. State* (1989), Ind., 540 N.E.2d 606, 609. We therefore reject the Johnsons' argument that because this case involves a claim for treble damages pursuant to I.C. 34-4-30-1, the jury's ability to draw inferences concerning the Johnsons' intent somehow should be modified.