**John F. McKEOWN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 64A03–9201–CR–003.

Court of Appeals of Indiana,
Third District.

Oct. 29, 1992.

James V. Tsoutsouris, Valparaiso, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

GARRARD, Judge.

John F. McKeown was tried by jury and convicted of operating a motor vehicle while suspended under IC 9–12–2, a class D felony. We affirm.

FACTS AND PROCEDURAL HISTORY:

On March 23, 1989, Valparaiso police officer Nick Starcevic ("Starcevic") observed John McKeown ("McKeown") driving a white station wagon with a homemade license plate. The license plate consisted of a piece of cardboard with "Not Reg" marked in red letters. When Starcevic stopped McKeown and asked for his driver's license, McKeown replied that he didn't have one. After initially refusing to cooperate, McKeown eventually gave Starcevic enough information to check the status of his driver's license. A computer check revealed that McKeown was an habitual traffic violator and that his driver's license had been suspended from 6/8/87 to 6/7/97. Starcevic arrested McKeown and charged him with operating a motor vehicle while suspended under IC 9–12–2, a class D felony.

Prior to trial, defense counsel filed a motion to dismiss for lack of habitual offender status. On June 25, 1990, the Indiana Court of Appeals had reversed two of McKeown's previous convictions for driving while suspended. The trial court denied the motion and on July 25, 1991, a jury found McKeown guilty of operating a

motor vehicle while an habitual traffic offender.

McKeown appeals his conviction and we affirm.

ISSUES:

McKeown presents three issues on appeal which we restate as follows:

I. Whether McKeown's prior convictions, determined after his arrest to be invalid as a violation of his constitutional right to counsel, may constitute a predicate for a subsequent conviction under IC 9–12–2.

II. Whether the trial court erred by admitting State's exhibits 2, 3, and 4.

III. Whether the evidence introduced at trial was sufficient to sustain a conviction for driving while an habitual traffic offender.

DISCUSSION:

Issue I:

█ On June 25, 1990, over one year after McKeown had been arrested on the present charge of operating a motor vehicle while an habitual traffic offender ("HTO"), the Indiana Court of Appeals reversed two of McKeown's previous convictions for driving while suspended. *McKeown v. State* (1990), Ind.App., 556 N.E.2d 3, *trans. denied.* The convictions were reversed because McKeown had not knowingly and voluntarily waived his right to representation by counsel as required by *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *Id.* at 6.

Prior to trial in this case McKeown filed a motion to dismiss based on the reversal of the two previous convictions. McKeown contends that the invalidation of these convictions also voids his status as an habitual offender thereby preventing a conviction in this case for driving while an habitual offender. Specifically he contends that the case of *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) prevents uncounseled convictions from being used as a predicate for a violation of IC 9–12–2 (repealed, now IC 9–30–10–5 to –15). We disagree.

We recognize that under the Sixth Amendment of the United States Constitution an uncounseled felony conviction cannot be used for certain purposes. *Lewis v. United States* (1980), 445 U.S. 55, 65, 100 S.Ct. 915, 921, 63 L.Ed.2d 198. *See, Burgett v. Texas, supra* (enhancement of punishment under recidivist statute); *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (consideration of uncounseled conviction in sentencing on a subsequent conviction); *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972) (use of uncounseled conviction to impeach the general credibility of the defendant).

The United States Supreme Court, however, has never suggested that an uncounseled conviction is invalid for all purposes. *Lewis,* 445 U.S. at 65, 100 S.Ct. at 921. For example, in *Lewis, supra,* the Court stated that the use of an uncounseled felony conviction may constitute a predicate for imposing a civil firearms disability enforceable by a criminal sanction. *Id.* at 65–69, 100 S.Ct. at 921–22. The Court went on to explain:

"In each of those cases, [*Burgett, Tucker,* and *Loper*] this Court found that the subsequent conviction or sentence violated the Sixth Amendment because it depended upon the reliability of a past uncounseled conviction. The federal gun laws, however, focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons. Congress' judgment that a convicted felon, even one whose conviction was allegedly uncounseled, is among the class of persons who should be disabled from dealing in or possessing firearms because of potential dangerousness is rational. Enforcement of that essentially civil disability through a criminal sanction does not 'support guilt or enhance punishment' *see Burgett* [389 U.S. at 115, 88 S.Ct. at 262], on the basis of a conviction that is unreliable when one considers Congress' broad purpose."

*Lewis,* 445 U.S. at 67, 100 S.Ct. at 922. The Court went on to note that a felon could, of course, challenge the validity of a

prior conviction, or otherwise remove his disability, before obtaining a firearm. "We simply hold today that the firearms prosecution does not open the predicate conviction to a new form of collateral attack." *Id.*

In *Gentry v. State* (1988), Ind.App., 526 N.E.2d 1187, *trans. denied,* the Indiana Court of Appeals adopted the reasoning of *Lewis* and applied it to convictions for driving while adjudged to be an habitual traffic offender. The court, quoting *State v. O'Neill* (1984), Me., 473 A.2d 415, stated:

"A person may not take the law into his own hands by driving a motor vehicle in defiance of the State's determination that he is an habitual offender.... There are strong policy reasons supporting [this] statutory scheme of administrative determinations of habitual offender status for repeated violators of the traffic laws of the State and the imposition of criminal sanctions for future violations by the adjudicated habitual offender. Prohibiting imprisonment of habitual offenders for their repeated abuse of the motor-vehicle-operation privilege denied them by reason of their habitual offender status, when their status as such was determined in an earlier civil proceeding without the assistance of counsel or, as in the instant case, where the uncounseled defendant plead guilty to the charge of operating under the influence of intoxicating liquor, would impose on the State and on the courts such severe burdens as to frustrate for all practical purposes the legislative scheme designed to free the highways of the State from those drivers who by their conduct and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws of the State.... In the instant case, as in *Lewis* ... the focus is not on reliability or non-reliability of the previous uncounseled conviction, but on the mere fact of conviction or the mere fact of the adjudication of habitual offender status."

*Gentry, supra* at 1188.

The court in *Gentry* held that driving after being determined to be an HTO is an offense separate and distinct from the oth-

er previous offenses. The very essence of the crime is driving after being declared an habitual offender. *Id.* at 1189. The crucial date, therefore, insofar as habitual violator status is concerned, is the date of driving, not the date on which the status is challenged or set aside. *Id.* If the person is driving, despite notification that he may not do so because he has been declared an habitual violator, he is flaunting the law even if one or more of the underlying convictions is voidable. *Id.*

We adopt the reasoning in the cases above. As in *Lewis, supra,* the focus of IC 9–12–2 (now IC 9–30–10–5 to –15) is on the mere fact of conviction in order to prevent potentially dangerous persons from hurting other persons on public roadways. McKeown was arrested at a time when his habitual offender status was still in effect. His present conviction, therefore, is not punishment for his earlier offenses, but stems from his operation of a motor vehicle in direct contravention of his classification as an habitual offender and in open violation of the statutory prohibition purposefully enacted to discourage repeated violations of traffic laws by that class of people. We therefore affirm the trial court.

Issue II:

Next, McKeown contends that the trial court erred in admitting State's exhibits 2, 3, and 4. We disagree.

State's exhibit number 2 is a certified copy of McKeown's driving record. McKeown first objected to its admission on the basis that the State had failed to lay a proper foundation. After the trial court overruled the objection and admitted the document, McKeown objected again on the basis of relevancy. That objection was also overruled.

First, a question cannot be raised on appeal unless a proper and timely objection was made in the trial court. *Chustak v. Northern Indiana Public Service Co.* (1972), 259 Ind. 390, 288 N.E.2d 149, 155. A party must object to evidence at the time it is offered into the record. *Reed v. Dillon* (1991), Ind.App., 566 N.E.2d 585, 588. A party who fails to make a timely objec-

tion normally waives his right on appeal to assert the admission of the evidence as erroneous. *Id.* at 588–89. An objection to the admission of written or documentary evidence should be made after it is offered and before it is admitted into evidence. *Snow v. Cannelton Sewer Pipe Co.* (1965) 138 Ind.App. 119, 210 N.E.2d 118, 124, *trans. denied.*

In addition, even if an objection is timely, the appellant must demonstrate actual prejudice before the error may be grounds for reversal. *Aldridge v. Abram & Hawkins Excavating Co., Inc.* (1985), Ind.App., 474 N.E.2d 107, 109, *trans. denied.* The trial court has considerable latitude in the admission or rejection of evidence and it is only when an error by the judge relates to material matter, or is of such character as to substantially affect the rights of parties, that the error justifies reversal. *Posey County v. Chamness* (1982), Ind.App., 438 N.E.2d 1041, 1048.

In this case, neither of the objections proffered by McKeown were adequate to preserve an issue for appeal. First, the objection on relevancy grounds came after the exhibit had already been admitted. Objections must be made before evidence is admitted into the record or no error is preserved. Second, McKeown has failed to demonstrate any prejudice flowing to him from the alleged lack of foundation or irrelevancy of the evidence. The burden is his and that burden was not met in this case. McKeown's brief was void of any showing of harm. The trial court, therefore, did not err in admitting State's exhibit number 2.

■ Next, State's exhibit numbers 3 and 4 are certified documents filed in the Porter County Court in a previous cause number involving McKeown. Exhibit number 3 is a certified copy of an order issued by the Porter County judge. Exhibit number 4 is a certified copy of the information, stating that in the previous case McKeown had been operating a motor vehicle while his driving privileges were suspended under IC 9–12–2. McKeown objected to both of these exhibits on the grounds of relevancy.

An objection which is not specific preserves no error on appeal. *Johnson v. Naugle* (1990), Ind.App., 557 N.E.2d 1339, 1341; *Bryant v. State ex rel. Van Natta* (1980), Ind.App., 405 N.E.2d 583, 584. An objection to evidence on the grounds of relevance is not considered to be a specific objection in Indiana and will not preserve the issue for appeal. For example, in *Schoby v. Smith* (1968), 142 Ind.App. 483, 235 N.E.2d 495, 495, counsel's statement "Objection, your Honor. It is irrelevant." was too indefinite to raise any question on appeal.

In this case, McKeown's attorney objected as follows:

"MR. KERR: You Honor, the matter that we are addressing here today happened in March of 1989. To present court documents of something that happened in 1987, I see absolutely no relevance ..." (R. 206).

Out of the hearing of the jury the attorneys argued to the judge the relative merits of the exhibits and their relevance to the present case.

It is clear from the record that relevancy was the only ground upon which McKeown objected to the introduction of these exhibits. Without more, such an objection is insufficient to preserve an issue for appeal. The trial court, therefore, did not err in admitting exhibit numbers 3 and 4 in the present case.

Issue III:

■ Finally, McKeown contends that the evidence introduced at trial was insufficient to sustain a conviction under IC 9–12–2. Specifically he contends that the State failed to show that it mailed notice of his suspension.

In reviewing the sufficiency of the evidence to sustain a conviction, the reviewing court neither weighs the evidence nor judges the credibility of the witnesses. *Traxler v. State* (1989), Ind.App., 538 N.E.2d 268, 269. The reviewing court considers only the evidence favorable to the verdict, together with all reasonable inferences flowing therefrom, and if there is substantial evidence of probative value to support the verdict, it will not be disturbed. *Id.*

First we note that proof of mailing was not an actual element of the offense of operating a motor vehicle while suspended as an habitual violator under IC 9–12–2. *Collins v. State* (1991), Ind., 567 N.E.2d 798, 800. Although proof of mailing will permit an inference of this knowledge, the State need only prove that the defendant had knowledge of the suspension. *Id.; Chambers v. State* (1989), Ind.App., 547 N.E.2d 301, 302.

In *Collins, supra,* the defendant was stopped by the police six months before the offense with which he was charged and advised that his license was suspended for being an habitual traffic offender. *Collins, supra* at 801. The defendant also admitted that at a court appearance for the previous arrest, the judge had read to him the charge that he knowingly operated an automobile after having been adjudged an habitual traffic offender. *Id.* From these facts the court concluded that the defendant had knowledge of his status as an habitual traffic offender. *Id.*

The facts of the present case are similar. Exhibits 3 and 4 show that in 1987 McKeown was charged with operating a motor vehicle while suspended, the same charge filed against McKeown in the present case. These documents further show that McKeown appeared in court where the information was read to him and he received a copy of it. McKeown testified at trial that he recognized exhibit number 3 and remembered that he was previously in court on the same charges. When McKeown was stopped for the present offense, he stated that he did not have a driver's license. Moreover, McKeown indicated at trial that he knew his license had been suspended:

"Q ... what was the nature of your writing to the Bureau?

A Because I was pulled over so many times for driving while suspended, and I wanted to know why. I never was— no notice (indiscernible) no answer, no response, and after about three times I finally got a letter that said I was suspended because my insurance had run out ..." (R. 272).

.    .    .    .    .

"A Well, I did receive one letter years ago from 'em. Finally about three years ago—finally telling me why I was driving while suspended ..." (R. 273).

.    .    .    .    .

"Q He told you you were charges [sic] with some misdemeanors.

A Yes.

Q And one of those misdemeanors you think was driving while suspended?

A Yeah, I know it was driving while suspended.

Q And do you know what driving while suspended means?

A Well, it probably means I'm suspended from driving." (R. 293–94).

This evidence is sufficient to support an inference that McKeown knew that his license was suspended at the time of his arrest in the present case.

CONCLUSION:

For the foregoing reasons, the judgment of the trial court is affirmed.

RATLIFF and HOFFMAN, JJ., concur.